UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BENNIE GIBSON,

                            Plaintiff,

        -against-                                          9:10-CV-0968 (LEK/TWD)

BRIAN FISCHER, Commissioner; *et. al.*,

                            Defendants.

_____

## MEMORANDUM-DECISION and ORDER

## I.    INTRODUCTION

        Plaintiff Bennie Gibson ("Plaintiff") commenced this *pro se* prisoner civil rights action,

pursuant to 42 U.S.C. § 1983, against twenty-one named Defendants, two Jane Does, and ten John

Does.[1]  Dkt. No. 50 ("Amended Complaint").[2]  Plaintiff's claims arise out of incidents alleged to

have occurred at four New York State correctional facilities where he was confined between April

2010 and August or September 2011.  Id.  Plaintiff contends that Defendants have violated his First,

Fourth, Eighth, and Fourteenth Amendment rights under the U.S. Constitution.  Id.  Plaintiff has

also asserted state-law claims for assault and battery, fraud, and intentional infliction of emotional

distress.  Id.  Plaintiff seeks money damages as well as declaratory and injunctive relief.  See

generally Am. Compl.

        Presently before the Court is a Motion for partial dismissal of Plaintiff's Amended

Complaint filed by Defendants Brian Fischer, Commissioner of the New York State Department of

_____

        [1] Although Plaintiff has named a large number of Doe Defendants, factual allegations
concerning the Does in the Amended Complaint are, to say the least, sparse.  See Am. Compl.

        [2] The Honorable George H. Lowe, U.S. Magistrate Judge, designated Plaintiff's Amended
Complaint as the operative pleading in the action on January 6, 2012.  Dkt. No. 72 at 3.

Correction and Community Supervision ("DOCCS"), David Allen, Sean Blair, James Harris, Brad

Ingraham, Deborah Pellerin, Christopher McDermott, Donald Maher, Katherine Martell, Cecil

Muschett, Elefterios Pasquelli, Ada Perez, and Bryan Swanhart (collectively, "Defendants").[3]   Dkt.

No. 121 ("Motion").  Defendants have also asked that Plaintiff be required to provide a more

definite statement pursuant to Federal Rule of Civil Procedure 12(e) in the event the Court grants

him leave to replead and for a stay of discovery pending a determination of their Motion to dismiss.[4]

Dkt. No. 121-1 ("Defendants' Memorandum").

    Plaintiff has filed papers in opposition.  Dkt. Nos. 131 ("Response"), 132, 133.  Plaintiff has

also filed a Letter Motion seeking leave to further amend his Amended Complaint.  Dkt. No. 160

("Letter Motion").

    For the following reasons, Defendants' Motion to dismiss is granted in part and denied in

part, Defendants' Motions for a more definite statement and stay of discovery is denied, and

Plaintiff's Letter Motion to amend is denied as moot.

_____

[3] The CM/ECF docket in the case reveals service of the Summons and Amended Complaint
on all of the moving Defendants.  Dkt.  However, the docket does not show service on named
Defendants Bisceglia, Bushane, Lewis, McIntyre, Young, Schurrs, and Killiar.  Id.  None of the
unserved Defendants are parties to the pending Motion to dismiss.  See Mot.; Dkt. No. 121-1
("Defendants' Memorandum") at 5.  The Motion nonetheless seeks dismissal as against most of
those unserved Defendants.  In a November 10, 2011 letter to the Clerk, Plaintiff disclosed that
"some of the John Does# Jane Doe# I have figured out and placed on Marshall Form."  Dkt. No. 59.
However, the docket sheet does not show service on any Doe Defendants and none are parties to the
Motion.  Dkt.  In his January 6, 2012 Order, Magistrate Judge Lowe directed Plaintiff to take
reasonable steps to ascertain the identity of the John Doe and Jane Doe Defendants named in the
Amended Complaint.  Dkt. No. 72 at 4.

[4] Defendants' requests for a more definite statement and stay are not included in their Notice
of Motion.  See Mot.  They are mentioned only in Defendants' Memorandum of law.  See Defs.'
Mem. at 26.  Page references to Defendants' Memorandum of law are to the document page
numbers rather than the numbers electronically added to the top of each page by the Clerk of the
Court.

## II.    LEGAL STANDARD

### A.  Rule 12(b)(6)

When a court evaluates a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), it must accept as true all well-pleaded facts alleged in a complaint and must draw all reasonable inferences in a nonmovant's favor.  Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 237 (2d Cir. 2007).  Mere "conclusions of law or unwarranted deductions of fact" need not be accepted as true.  First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994).  A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Plausibility requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]," Twombly, 550 U.S. at 556, and "more than a sheer possibility that a defendant has acted unlawfully."  Iqbal, 556 U.S. at 678.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned the-defendant-unlawfully-harmed-me accusation."  Id. at 678 (quoting Twombly, 550 U.S. at 556).  Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice.  Id. (internal quotation marks omitted).  Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, a pleader has not demonstrated that she is entitled to relief and a complaint is subject to dismissal.  See id. at 679.

Where a party is proceeding *pro se*, a court is obliged to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest."  See Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994); see also Harris v. Mills, 572 F.3d 66, 72 (2d

3

Cir. 2009) (holding that courts remain obligated to construe *pro se* complaints liberally even after

Twombly). Furthermore, "[i]n cases where a *pro se* plaintiff is faced with a motion to dismiss, it is

appropriate for the court to consider materials outside the complaint to the extent they are consistent

with the allegations in the complaint." See, e.g., Donhauser v. Goord, 314 F. Supp. 2d 119, 121

(N.D.N.Y. 2004) (considering factual allegations in plaintiff's opposition papers) (citations and

internal quotations marks omitted), vacated and amended in part on other grounds, 317 F. Supp. 2d

160 (N.D.N.Y. 2004).

Where a *pro se* complaint fails to state a cause of action, a court generally "should not

dismiss without granting leave to amend at least once when a liberal reading of the complaint gives

any indication that a valid claim might be stated."[5] Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000) (citation and internal quotation marks omitted). An opportunity to amend is not required

where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading

will cure it." Id. (citation omitted).

### B. 28 U.S.C. § 1915A

Even where a defendant has not specifically moved for dismissal of a claim under Rule

12(b)(6), a court is still required to analyze the claim's sufficiency under 28 U.S.C. § 1915A.[6] Ford

---

[5] Plaintiff's initial Complaint in this suit was never served. Dkt. No. 1 ("Complaint"). Plaintiff added numerous Defendants and new claims in his Amended Complaint. Compare Compl., with Am. Compl. Because the sufficiency of the claims in Plaintiff's initial Complaint was never assessed by the Court, and the Amended Complaint includes new Defendants and claims, the Court treats the Amended Complaint as Plaintiff's initial pleading for purposes of determining whether leave to amend should be given.

[6] Although Plaintiff was released from custody in or about August 2012, he was incarcerated at the time this action was commenced. See Dkt. No. 166 at 1; Compl. at 3. Therefore, § 1915A is applicable. See Rogers v. N.Y.C. Police Dep't, No. 12-CV-3042, 2012 WL 4863161, at *1 n.3 (E.D.N.Y. Oct. 12, 2012) (holding that that a plaintiff who has been released from incarceration is still considered a prisoner under § 1915A if he was imprisoned at the time the action was

v. Smith, No. 9:11-CV-212, 2012 WL 4492181, at *6 (N.D.N.Y. Sept. 28, 2012).[7]  Section 1915A

directs a court to engage in a *sua sponte* review of "a complaint in a civil action in which a prisoner

seeks redress from a governmental entity or officer or employees of a governmental agency" and to

"identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the

complaint is . . . frivolous, malicious, or fails to state a claim upon which relief can be granted; or .

. . seeks monetary relief from a defendant who is immune from such relief."[8]  28 U.S.C. § 1915A(b).

Section 1915A applies to all actions brought by prisoners against government officials, even when

the filing fee has been paid.  See Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999).

### III.    DISCUSSION

#### A.  Eleventh Amendment

Plaintiff has asserted official-capacity claims for money damages under 42 U.S.C. § 1983

against all Defendants named in his Amended Complaint.  Am. Compl. at 2.  The moving

Defendants seek dismissal of those official-capacity claims on Eleventh Amendment grounds.[9]

---

commenced); see also Brown v. Jacobson, No. 98 Civ. 0565, 1999 WL 1125122, at * 5 (S.D.N.Y. Dec. 8, 1999) (finding that a prisoner's complaint was subject to heightened scrutiny under the Prison Litigation Reform Act of 1999 even after release from custody because it advanced concerns about prison officials' misconduct) (citing Johnson v. Hill, 965 F. Supp. 1487, 1488 n.2 (E.D. Va. 1997)).

[7] The Clerk of the Court will provide copies of all of the unpublished decisions cited in this Memorandum-Decision and Order to Plaintiff in accordance with the Second Circuit's decision in LeBron v. Sanders, 557 F.3d 76 (2d Cir. 2009).

[8] "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory."  Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998) (citations and internal quotation marks omitted).

[9] Although only certain of the named Defendants have moved to dismiss, the Court is empowered to dismiss Plaintiff's official-capacity claims for money damages *sua sponte* as against all of the Defendants, including the Doe Defendants.  See Atl. Healthcare Benefits Trust v. Googins,

5

Defs.' Mem. at 12-13.  The Eleventh Amendment protects a state against suits brought in federal court.  Alabama v. Pugh, 438 U.S. 781, 782 (1978).  The immunity granted to the states under the Eleventh Amendment extends beyond the states themselves to state agents and instrumentalities that are effectively arms of the state, Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006), and bars all money damages claims against state officials acting in their official capacities.  Kentucky v. Graham, 473 U.S. 159, 167-68 (1985); see also Davis v. New York, 316 F.3d 93, 101 (2d Cir. 2002) (holding that an inmate plaintiff's claims for damages against all individual DOCCS employees sued in their official capacities are considered claims against New York and are thus barred by the state's Eleventh Amendment immunity).  Therefore, Plaintiff's claims for money damages against all of the named and Doe Defendants in their official capacities are dismissed on Eleventh Amendment grounds without leave to amend.

**B. Injunctive and Declaratory Relief**

Plaintiff seeks a declaration that the New York State regulations governing Tier I violation hearings[10] are illegal and unconstitutional because violations can be decided without all of the evidence being presented and because no written decision is required.  Am. Compl. at 44.[11]  Plaintiff

---

2 F.3d 1, 4 (2d Cir. 1993) (holding that the Eleventh Amendment may be raised *sua sponte* because it affects a court's subject-matter jurisdiction); see also Saxon v. Attica Med. Dep't, 468 F. Supp. 2d 480, 484 (W.D.N.Y. 2007) (recognizing that 28 U.S.C. § 1915A directs district courts to dismiss *sua sponte* prisoner claims barred by the Eleventh Amendment).

[10] N.Y. COMP. CODES R. & REGS. tit. 7, § 252.

[11] In referring to specific pages in the Amended Complaint, the Court uses the numbers electronically added to the top of each page by the Clerk of the Court, not the numbers on the bottom of each page.

requests an injunction mandating that all evidence be presented at Tier I violation hearings.[12]  Id.

Plaintiff also seeks a declaration that the absence of a requirement that grievance complaints be

investigated is unconstitutional.[13]  Id.  In addition, Plaintiff seeks a declaration that violent

retaliatory acts are biased and unjustifiable.  Id. at 47.

Once Plaintiff was released from prison in or about August 2012, he ceased to have a

personal stake in the outcome of his requests for declaratory and injunctive relief, thereby rendering

his claims moot.  See Muhammad v. City of N.Y. Dep't of Corr., 126 F.3d 119, 122-23 (2d Cir.

1997) ("When 'the parties lack a legally cognizable interest in the outcome' of a case, it is moot and

federal courts lack jurisdiction.") (quoting County of Los Angeles v. Davis, 440 U.S. 625, 631

(1979)); see also McCall v. Pataki, 232 F.3d 321, 322 (2d Cir. 2000) (holding that "a pro se litigant

. . . is not empowered to proceed on behalf of anyone other than himself" and thus may not assert

claims in a representative capacity (citing 28 U.S.C. § 1654)).  Plaintiff's claims for declaratory and

injunctive relief are therefore dismissed as moot.

### C. Downstate Correctional Facility Incident[14]

On or about April 10, 2010, while he was confined at the Downstate Correctional Facility

---

[12] "The procedures established by the New York regulations" have previously been found to "comport with the due process procedural rights in disciplinary proceedings to which prisoners are entitled."  See Walker v. Bates, 23 F.3d 652, 656 (2d Cir. 1994) (citing Wolff v. McDonnell, 418 U.S. 539 (1974)).

[13] See Tafari v. McCarthy, 714 F. Supp. 2d 317, 344 (N.D.N.Y. 2010) ("[P]risoners do not have a due process right to a thorough investigation of grievances." (citing Torres v. Mazzuca, 246 F. Supp. 2d 334, 341-42 (S.D.N.Y. 2003)); Green v. Herbert, 677 F. Supp. 2d 633, 639 (W.D.N.Y. 2010) (holding that an inmate has no constitutional right to have a grievance processed or investigated in a particular manner).

[14] In their Memorandum of law, Defendants refer to the Downstate incident as "Incident 1." Defs.' Mem. at 2-3.

("Downstate"), Plaintiff asked corrections officer Defendant Jane Doe #1 for permission to go to the beginning of the line in the mess hall to get a spoon.  Am. Compl. at 11-12.  She told him that he could but would have to be frisked first.  Id.  Plaintiff readily agreed and began to walk outside to be frisked when he was asked if he had anything on him.  Id. at 12.  According to Plaintiff, when he turned and reached into his pocket to give corrections officers his eyeglasses, he was thrown three to four feet into a wall and his head was bumped into the wall two or three times.  Id.  Plaintiff was also kicked in the ankle area by corrections officers to force him to spread his feet.  Id. at 13. Plaintiff was asked what he was doing and responded that he was trying to give them his glasses. Id. at 12.  When Plaintiff then told the corrections officers that he had an attorney, he was thrown into the wall again, even though he was already standing against it.  Id.  In his opposition papers, Plaintiff contends that he sustained contusions as a result of his head being slammed into the wall. Resp. at 18.

Plaintiff told the corrections officers he did not want to eat any more and did not want to get into a racial fight with them.  Am. Compl. at 12.  Plaintiff then saw two Hispanic inmates who had forgotten their spoons come out and get frisked without incident.  Id.  Plaintiff felt that the corrections officers might be biased against him because they did not like African Americans.  Id.

Plaintiff was returned to his housing without eating and told to pack.  Id.  He was called downstairs by corrections officers and told he should not have taken his hands off the wall and "you guys kill people."  Id.  Plaintiff told the officers he had not yet reached the wall and had not been imprisoned on a crime of violence.  Id.  Plaintiff was then informed that he had threatened the officers by telling them he had an attorney, to which Plaintiff responded he was going to file a lawsuit.  Id.

Plaintiff was immediately moved and put on cube restrictions or keeplock for four days before his disciplinary hearing on a misbehavior report filed in connection with the mess hall incident. Id.; Pl.'s Resp. at 18. Plaintiff was moved from the housing unit before he could ascertain the identity of witnesses and was not allowed to call witnesses at his disciplinary hearing. Am. Compl. at 12. A female hearing officer told Plaintiff that witnesses were not allowed in Tier 1 disciplinary hearings and found him guilty of leaving his chair in the mess hall without permission, refusing to be searched, refusing to eat, and threatening officers. Id. at 12-13. It appears from the allegations in the Amended Complaint that Plaintiff's punishment was restriction to his cell for thirteen days with no recreation. Id. at 13.

Although Defendants have identified Defendants Katherine Martel ("Martel") and Brian Swanhart ("Swanhart") as the only two Downstate personnel named in the lawsuit, Plaintiff has included no factual allegations in his Amended Complaint suggesting Martel's and Swanhart's involvement in the Downstate incident. Defs.' Mem. at 17. See generally Am. Compl. In his Response, Plaintiff has noted only that Martel and Swanhart were identified in the misbehavior report. Resp. at 18.

Plaintiff has asserted the following claims arising out of the Downstate incident: (1) Eighth Amendment claim for excessive force; (2) Eighth Amendment claim for failure to intervene; (3) Eighth Amendment claim of cruel and inhuman treatment and deliberate indifference by supervisory officials and state administrators who have: failed to properly train corrections officers in the use of force; failed to provide for periodic stress management for corrections officers; failed to properly screen employees; and created a policy of willful blindness to attacks on inmates by corrections officers; (4) violation of the Equal Protection Clause under the Fourteenth Amendment; (5) filing of

a false misbehavior report in retaliation for Plaintiff's action in threatening a lawsuit in violation of the First Amendment and denial of due process under the Fourteenth Amendment; (6) conspiracy by corrections officers to present false testimony; and (7) state-law claims for assault and battery and intentional infliction of emotional distress.  Am. Compl. at 43-44.

        *1. Excessive Force*

Section § 1983 imposes liability for "conduct which 'subjects, or causes to be subjected' the complainant to a deprivation of a right secured by the Constitution and laws."  Rizzo v. Goode, 423 U.S. 362, 370-71 (1976) (quoting 42 U.S.C. § 1983).  "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991)).  Thus, to prevail on a § 1983 claim against an individual, a plaintiff must show some tangible connection between the constitutional violation alleged and that particular defendant.  See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986).  A complaint that fails to allege personal involvement in the alleged unlawful conduct is "fatally defective" on its face.  Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir. 1987).

In his Response, Plaintiff notes that Defendants Martel and Swanhart had been identified in the misbehavior report issued with respect to the incident.  Resp. at 18.  Plaintiff does not, however, set forth facts in either his Amended Complaint or his Response plausibly suggesting that either of those Defendants was involved in the alleged excessive use of force against him.  Nor does Plaintiff name any other Defendant as having been involved.[15]  Plaintiff's failure to allege personal

_____

[15] Plaintiff has not alleged that any of the Doe Defendants except for Jane Doe #1, who is alleged to have done nothing more than inform Plaintiff he would have to be frisked before going to get a spoon, were involved in the Downstate incident.  See Am. Compl.

involvement by any Defendant is fatal to his Downstate excessive-force claim.  Alfaro, 814 F.2d at 886.

Plaintiff's excessive-force claim could likely not withstand dismissal even if he had identified the particular Defendants involved.  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976).  In order to sustain an Eighth Amendment excessive-force claim, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).  The objective element requires a showing that the defendant's conduct was "inconsistent with contemporary standards of decency."  Whitely v. Albers, 475 U.S. 312, 327 (1986) (citation omitted).  "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992).

"The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10 (citation omitted).  "Consequently, 'not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers violates a prisoner's constitutional rights,' Boddie v. Schneider, 105 F.3d 857, 862 (2d Cir. 1997), and 'not even every malevolent touch by a prison guard gives rise to a federal cause of action.' Id. at 862 (quoting Hudson, 503 U.S. at 9)." Perry v. Stephens, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) (citation and internal quotation marks omitted).  "[S]ome degree of injury is ordinarily required to state a claim" of excessive force under the Eighth Amendment. United States v. Walsh, 194 F.3d 37, 50 (2d Cir. 1999).  However, a plaintiff "need not prove

significant injury to make out [a] . . . claim." <u>Griffin v. Crippen</u>, 193 F.3d 89, 92 (2d Cir. 1999) (citation and internal quotation marks omitted).

The allegations in Plaintiff's Amended Complaint and Response that he was thrown into the wall; his head was bumped (or slammed) into the wall two or three times leaving him with contusions; and his legs were kicked apart by corrections officers do not plausibly allege excessive force sufficiently egregious to state an Eighth Amendment claim. <u>See, e.g.</u>, <u>Tavares v. City of New York</u>, No. 08 Civ. 3782, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011) (granting the defendant summary judgment because force used was *de minimis* and did not rise to the level of a constitutional violation where the plaintiff claimed defendant threw him against the wall, kicked him harshly on both ankles, and compressed his chest against the wall so that he thought he was going to pass out); <u>Rodriguez v. Peguero</u>, No. 09-CV-1005, 2011 WL 754123, at * 5 (N.D.N.Y. Jan. 27, 2011) (holding that allegations that the defendant handcuffed the plaintiff and slammed him against a wall hurting his chest and twisting his arm in an upward motion causing injury to his shoulder, chest, and ear failed to meet the objective standard for stating an excessive-force claim); <u>James v. Phillips</u>, No. 05 Civ. 1539, 2008 WL 1700125, at *4-5 (S.D.N.Y. Apr, 9, 2008) (finding *de minimis* use of force where prison guard had shoved inmate into a door resulting in swelling of his chin).

Plaintiff's excessive-force claim is therefore dismissed as to Defendants Martel and Swanhart. However, in light of his *pro se* status, Plaintiff is granted leave to amend his excessive-force claim.

### 2. Failure to Intervene

"The Eighth Amendment requires prison officials to take reasonable measures to guarantee

the safety of inmates in their custody." Hayes v. N.Y.C. Dep't of Corrs., 84 F.3d 614, 620 (2d Cir. 1996) (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994)).  Law enforcement officials, including prison officials, can be held liable under § 1983 for failing to intervene in a situation where another official is violating an inmate's constitutional rights in their presence.  Curley v. Village of Suffern, 268 F.3d 65, 72 (2d Cir. 2001); see also Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) (holding that prison officials' Eighth Amendment duty to take reasonable measures to guarantee the safety of inmates in their custody includes a duty to protect inmates from harm threatened by other officers).  A state actor can be held liable for failure to prevent another state actor from committing a constitutional violation if "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), aff'd, 461 F. App'x. 18 (2d Cir. 2012).

As in the case of his excessive-force claim, Plaintiff has failed to identify any named Defendants who failed to intervene.  Furthermore, while Plaintiffs claims that John Doe Defendants #1, #2, and #4 and Jane Does #3 were present, he alleges no facts showing that they failed to intervene.  As a result, Defendants Martel and Swanhart and John Doe Defendants #1, #2, and #4 and Jane Doe #3 are entitled to dismissal of the claim.  See Alfaro, 814 F.2d at 886.  However, in light of his *pro se* status, Plaintiff is also granted leave to file an amended failure-to-intervene claim.

### 3.  Failure to Train, Etc. by Supervisory Officials

Plaintiff has alleged that unidentified supervisors, prison officials, wardens, and state administrators, along with the DOCCS Commissioner, failed to train corrections officers properly

on the use of force, failed to require officers to attend stress-management classes, and created a policy of willful blindness to attacks against prisoners at Downstate. Am. Compl. at 43. Plaintiff has named the DOCCS Commissioner, Brian Fischer, and Ada Perez, identified as the Downstate Superintendent, as Defendants. Id. at 1. Both have been served and are parties to Defendants' Motion to dismiss. The other three supervisory personnel named as Defendants have been identified in Defendants' papers as an unidentified Deputy Commissioner, Adirondack Correctional Facility Superintendent Bisceglia, and IGRC Supervisor Killiar. Defs.' Mem. at 13. Defendants Bisceglia and Killiar have not been served and are not parties to the Motion to dismiss.[16] The unidentified Deputy Commissioner was served but has not yet been identified and is not a party to the Motion to dismiss.[17] Plaintiff has not included factual allegations in his Amended Complaint showing personal involvement of any of these five supervisory Defendants, served or unserved, in the Downstate incident.

As noted supra, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." McKinnon, 568 F.2d at 934. The United States Supreme Court has made it clear that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior.").

---

[16] Even though Defendants Bisceglia and Killiar have not been served, claims asserted against them are subject to sua sponte dismissal under 28 U.S.C. § 1915A.

[17] Claims asserted against the unidentified Deputy Commissioner are also subject to sua sponte dismissal under 28 U.S.C. § 1915A.

The Second Circuit has held that personal involvement by a supervisor under § 1983 may be found where:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).

"*[R]espondeat superior* liability does not lie against corrections officers in Section 1983 actions," Bass, 790 F.2d at 263, and "[h]olding a position in a hierarchical chain of command, without more, is insufficient to support a showing of personal involvement." Groves v. Davis, No. 11-CV-1317, 2012 WL 651919, at *6 (N.D.N.Y. Feb. 28, 2012) (citing McKinnon, 568 F.2d at 934); see also Richardson v. Goord, 347 F.3d 431, 435 (2d Cir. 2003) ("[A] mere 'linkage in the prison chain of command' is insufficient to implicate . . . a prison superintendent in a § 1983 claim." (quoting Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985))). Therefore, "a plaintiff must . . . allege a tangible connection between the acts of a defendant and the injuries suffered." Bass, 790 F.2d at 263.

Conclusory claims that a supervisory official has failed to provide proper training and supervision or created a policy, without facts showing personal involvement, are legally insufficient to state a claim under any of the categories identified in Colon. Bridgewater v. Taylor, 832 F. Supp. 2d 337, 348 (S.D.N.Y. 2011); Koehl v. Bernstein, No. 10 Civ. 3808, 2011 WL 2436817, at *19 (S.D.N.Y. June 17, 2011); White v. Fischer, No. 09-CV-240, 2010 WL 624081, at *6 (N.D.N.Y. Feb. 18, 2010); see also Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (holding that vague

and conclusory allegations that a supervisor has failed to properly monitor the actions of subordinate employees do not suffice to establish the requisite personal involvement and support a finding of liability); Gill v. Mooney, 824 F.2d 192, 196 (2d Cir. 1987) (holding that dismissal of a § 1983 claim is proper where plaintiff does no more than allege defendant was in charge of prison). Therefore, Plaintiff's Downstate claim for lack of training, etc., against supervisory Defendants Fischer, Perez, Bisceglia, Killiar, and the unidentified Deputy Commissioner is dismissed. However, in light of his *pro se* status, Plaintiff is granted leave to amend this claim.

### 4. Equal Protection

Plaintiff claims that two Hispanic inmates who wanted spoons around the same time as he did were frisked without incident. Am. Compl. at 12. Plaintiff claims that the unidentified corrections officers involved in the alleged use of force against him may have been biased against African Americans, and that his rights under the Equal Protection Clause were violated. Id. at 12, 43. As with his other Downstate incident claims, Plaintiff's failure to identify any named or Doe Defendants as having been involved in violating his right to equal protection is fatal to his claim.[18] See Alfaro, 814 F.2d 886.

Even if specific Defendants had been identified, Plaintiff has failed to state a facially plausible claim for denial of equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, § 1. This is "essentially a direction that all

---

[18] There are no allegations in either Plaintiff's Amended Complaint or his Response implicating Defendants Martel and Swanhart or any of the other named or Doe Defendants in the claimed denial of equal protection. As previously noted, Jane Doe #1 is alleged to have done nothing more than tell Plaintiff he would have to be frisked before he could get a spoon. Am. Compl. at 11-12.

persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc.,

473 U.S. 432, 439 (1985). The Equal Protection Clause "bars the government from selective

adverse treatment of individuals compared with other similarly situated individuals if 'such selective

treatment was based on impermissible considerations such as race, religion, intent to inhibit or

punish the exercise of constitutional rights, *or malicious or bad faith intent to injure a person*.'"

Bizzarro v. Miranda, 394 F.3d 82, 86 (2d Cir. 2005) (emphasis in original) (quoting LeClair v.

Saunders, 627 F.2d 606, 609-10 (2d Cir. 1980)). Governmental action may also violate the Equal

Protection Clause where defendants intentionally treat the plaintiff "differently from others with no

rational basis for the difference in treatment." Id. (citing Village of Willowbrook v. Olech, 528 U.S.

562, 564 (2000)). A plaintiff asserting an equal-protection claim based upon his race, as in this

case, must allege facts plausibly suggesting that "(1) he was treated differently from similarly

situated individuals; and (2) the defendants treated him differently due to his membership in a

suspect class, inhibited his exercise of a fundamental right, acted out of malice, or acted irrationally

and arbitrarily." Tuitt v. Chase, No. 11-CV-0776, 2013 WL 877439, at *12 (N.D.N.Y. Jan. 30,

2013).

Plaintiff's assertion that two Hispanic inmates were frisked without incident while he was

pushed into the wall by corrections officers does not support a plausible claim for denial of equal

protection. There are no facts alleged suggesting that the two inmates did anything that would have

likely triggered a reaction from the corrections officers, whereas Plaintiff has essentially conceded

that the corrections officers' use of force was precipitated by Plaintiff reaching into his pocket for

his glasses. Am. Compl. at 44. Plaintiff has thus failed to allege facts showing that the two inmates

and he were similarly situated. Plaintiff's equal-protection claim is therefore dismissed as against

Defendants Martel and Swanhart with leave to amend.

     *5. Retaliatory Filing of a False Misbehavior Report and Denial of Due Process*

     "A prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." Boddie, 105 F.3d at 862. A false misbehavior report may, however, constitute a constitutional violation when it is filed in retaliation for a prisoner's exercise of a protected First Amendment right. See Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). Likewise, an inmate may have an actionable claim for the filing of a false misbehavior report when he can show that he was disciplined without adequate due process because of the report. See Franco v. Kelly, 854 F.2d 584, 587 (2d Cir. 1988). Plaintiff has claimed both retaliation and a denial of due process in connection with the allegedly false misbehavior report at issue. Am. Compl. at 43-44.

     a. Retaliation

     Plaintiff claims that a false misbehavior report was filed against him in connection with the Downstate incident in retaliation for his refusal to concede that the corrections officers had used force against him because he kept taking his hands off the wall when he was standing against the wall to be frisked. Id. at 44. The Court finds that, liberally construed, Plaintiff's Amended Complaint alleges retaliation for Plaintiff's statement during the alleged use of force that he had an attorney, in combination with his subsequent threat to file a lawsuit. Id. at 12.

     In his Amended Complaint, Plaintiff has not identified any Defendants as having filed the misbehavior report. Even construing the Amended Complaint liberally and drawing all reasonable inferences in Plaintiff's favor, the Court cannot read the Amended Complaint to allege that Defendants Martel and Swanhart issued the misbehavior report or were involved in its issuance. Furthermore, while Plaintiff's Response notes that Defendants Martel and Swanhart were

"identified" in the misbehavior report, there are no facts averred that allow the inference that Defendants Martel and Swanhart were the ones who issued the report. Resp. at 18. The absence of factual allegations showing personal involvement in the issuance of the misbehavior report by any named or Doe Defendants is fatal to Plaintiff's retaliation claim. See Alfaro, 814 F.2d at 886.

Had Plaintiff identified Defendants alleged to have filed the misbehavior report, his Amended Complaint might well be found to state a plausible claim for retaliation. Claims of retaliation find their roots in the First Amendment. See Gill v. Pidlypchak, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such claims is the notion that in a prison setting, corrections officials may not take actions that would have a chilling effect upon an inmate's exercise of First Amendment rights. See id. at 381-83. Because of the relative ease with which claims of retaliation can be recited, however, courts have scrutinized such retaliation claims with particular care. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983), overruled on other grounds, Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.

Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), overruled on other grounds, Swierkiewicz, 534 U.S. 506.

To state a retaliation claim under 42 U.S.C. § 1983, a plaintiff must allege facts plausibly suggesting that: (1) the speech or conduct at issue was "protected"; (2) the defendants took "adverse action" against the plaintiff—namely, action that would deter a similarly situated individual of

19

ordinary firmness from exercising her constitutional rights; and (3) there was a causal connection between the protected speech and the adverse action—that the protected conduct was a "substantial or motivating factor" in the defendants' decision to take action against the plaintiff. <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977); <u>Pidlypchak</u>, 389 F.3d at 380 (citing <u>Dawes</u>, 239 F.3d at 492).

Several factors may be considered in determining whether a causal connection exists between a plaintiff's protected activity and a prison official's actions. <u>Baskerville v. Blot</u>, 224 F. Supp. 2d 723, 732 (S.D.N.Y. 2002) (citing <u>Colon</u>, 58 F.3d at 873). Those factors include: "(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his or her motivation." <u>Id.</u> "The causal connection must be sufficient to support an inference that the protected conduct played a substantial part in the adverse action." <u>Id.</u> The Second Circuit has held that the passage of "only six months" is sufficient to support an inference of a causal connection. <u>Espinal v. Goord</u>, 558 F.3d 119, 129 (2d Cir. 2009) (citing <u>Gorman-Bakos v. Cornell Coop. Extension</u>, 252 F.3d 545, 555 (2d Cir. 2001)).

Threats of litigation have been found to constitute protected First Amendment activity for purposes of retaliation claims. <u>See, e.g.</u>, <u>Johnson v. Connolly</u>, No. 07-CV-1237, 2010 WL 2628720, at *6 (N.D.N.Y. Mar. 15, 2010) (holding that the plaintiff's letter to superintendent revealing that he was contemplating a lawsuit was protected activity under the First Amendment). Furthermore, the filing of a false misbehavior report constitutes adverse action for purposes of a retaliation claim. <u>See</u> <u>Pidlypchak</u>, 389 F.3d at 384.

While it is far from certain at this point that Plaintiff could ultimately prove a causal

connection between his threat of a lawsuit and the misbehavior report, a connection cannot be completely ruled out at this point. Am. Compl. at 12. Therefore, even though the retaliation claim must be dismissed because of Plaintiff's failure to identify the Defendant or Defendants responsible for the report, Plaintiff is granted leave to amend.

<u>b.</u> <u>Denial of Due Process</u>

To make out a § 1983 claim for denial of Fourteenth Amendment due process rights, a plaintiff must demonstrate: "(1) that he possessed a liberty interest and (2) that the defendants deprived him of that interest as a result of insufficient process." <u>Giano v. Selsky</u>, 238 F.3d 223, 225 (2d Cir. 2001) (internal quotation marks omitted). An inmate can show deprivation of a liberty interest under the Due Process Clause when a prison condition imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995). In determining whether discipline imposes an "atypical and significant hardship," a court must consider "'the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions' and 'the duration of the disciplinary segregation imposed compared to discretionary confinement.'" <u>Palmer v. Richards</u>, 364 F.3d 60, 64 (2d Cir. 2004) (quoting <u>Wright v. Coughlin</u>, 132 F.3d 133, 136 (2d Cir. 1998)). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." <u>Sealey v. Giltner</u>, 197 F.3d 578, 586 (2d Cir. 1999) (internal citation omitted). Where separate penalties of confinement overlap or immediately follow one another to create a sustained period of confinement, a district court is required to consider whether they should be aggregated for purposes of identifying a protected liberty interest. <u>See</u> <u>Reynoso v. Selsky</u>, 292 F. App'x. 120, 122 (2d Cir. 2008)

21

("Overlapping disciplinary penalties may, under some circumstances, have to be aggregated for purposes of determining whether a liberty interest was violated." (citing Sims v. Artuz, 230 F.3d 14, 23-24 (2d Cir. 2000))); see also Giano, 238 F.3d at 226 ("'[S]eparate sentences should be aggregated for purposes of the Sandin inquiry' when they constitute a sustained period of confinement." (quoting Sims, 230 F.3d at 23-24)).

Plaintiff has alleged that a female hearing officer, one of the Jane Doe Defendants, placed him in keeplock[19] for thirteen days on a Tier I violation without allowing him to call witnesses in violation of his due process rights.  Am. Compl. at 12.  Allegations of thirteen days in keeplock do not satisfy Plaintiff's threshold burden of alleging facts plausibly showing that he experienced an atypical and significant hardship implicating a protected liberty interest.[20]  Numerous district courts in the Second Circuit have concluded that keeplock for a time greater than thirteen days does not constitute an atypical or significant hardship under Sandin.[21]  See, e.g., Brown v. Graham, No. 07-

_____

[19] The general conditions of keeplock have been described as follows:
Under keeplock, an inmate is confined to his general population cell for 23 hours per day, with one hour reserved for exercise, the same time permitted general population inmates for exercise . . . .  Within the 23 hour period, inmates are permitted to leave their cell for showers, personal and social visits, medical examinations and counseling in the same manner and for the same number of times as general population inmates in a maximum security facility as the one plaintiff was in . . . .  Finally, while in keeplock, inmates are given access to cell study programs, books and periodicals. . . .  The most significant difference between keeplock and general population inmates is that the former do not leave their cells for out-of-cell programs unless they are a part of mandatory educational programs and general population inmates spend more time out of their cells on weekends.
Lee v. Coughlin, 26 F. Supp. 2d 615, 628 (S.D.N.Y. 1998) (citation and internal quotation marks omitted).

[20] Because Plaintiff has failed to allege a liberty interest, an analysis of whether his hearing complied with due process requirements is unnecessary.

[21] There are no allegations in the Amended Complaint suggesting, or from which it could be inferred, that Plaintiff's time in keeplock overlapped with, or directly preceded or followed, another

CV-1353, 2010 WL 6428251, at * 9 (N.D.N.Y. Mar. 30, 2010) ("The federal district courts in New York, applying Sandin, have been consistent in holding that terms of SITU or 'keeplock' of approximately 30 days or less do not implicate a liberty interest protected by the Due Process clause, even in the absence of detailed factual development regarding the conditions of confinement."), adopted, 2011 WL 1213482 (N.D.N.Y. Mar. 31, 2011), aff'd, 470 F. App'x. 11 (2d Cir. 2012); Duncan v. Keane, No. 95 Civ. 1090, 1997 WL 328070, at *2 (S.D.N.Y. June 13, 1997) (finding thirty days in keeplock not atypical or significant hardship); Harris v. Keane, 962 F. Supp. 397, 404 (S.D.N.Y. 1997) ("The Sandin Court held that disciplinary segregation for 30 days did not present . . . atypical, significant deprivation, nor did the deprivation trigger due process protection of its own force."). The Second Circuit has held that where the period of confinement exceeded thirty days, "refined fact-finding" is required to resolve defendants' claims under Sandin. See Colon v. Howard, 215 F.3d 227, 230 (2d Cir. 2000).

Because no liberty interest was implicated by Plaintiff's thirteen-day keeplock sentence, his due process claim against the Jane Doe hearing officer is dismissed without leave to amend.

### 6. Conspiracy by Corrections Officers to Present False Testimony

Plaintiff claims that unidentified corrections officers conspired to present false testimony against him in connection with the Downstate incident.[22] Am. Compl. at 44. To state a conspiracy claim under § 1983, a plaintiff must allege facts plausibly showing: "(1) an agreement between two or more state actors or a state actor and a private entity; (2) to act in concert to inflict an

_____

disciplinary segregation. Therefore, there is no issue of aggregation.

[22] Defendants have not addressed Plaintiff's conspiracy claim in their Motion to dismiss. The Court is nonetheless required under 28 U.S.C. § 1915A to consider whether Plaintiff has stated a claim.

unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."

Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999). A claim for conspiracy to violate

constitutional rights under 42 U.S.C. § 1985 requires allegations showing: (1) a racial or class-based

discriminatory animus underlying the defendant's actions; and (2) that the conspiracy was aimed at

interfering with a plaintiff's protected rights. See Brito v. Arthur, 403 F. App'x 620, 621 (2d Cir.

2010) (citing Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268 (1993)).

"A complaint containing only conclusory, vague, or general allegations of conspiracy to

deprive a person of constitutional rights cannot withstand a motion to dismiss." Leon v. Murphy,

988 F.2d 303, 311 (2d Cir. 1993) (citations and internal quotation marks omitted). A plaintiff must

allege facts plausibly suggesting "a meeting of the minds such that defendants entered into an

agreement, express or tacit, to achieve [an] unlawful end." Romer v. Morgenthau, 119 F. Supp. 2d

346, 363 (S.D.N.Y. 2000) (quoting Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999)).

Plaintiff's failure to identify particular named or Doe Defendants as alleged members of the

claimed conspiracy is fatal to his claim. See Alfaro, 814 F.2d 886. Furthermore, Plaintiff's

allegations of conspiracy are entirely conclusory and, therefore, cannot withstand *sua sponte*

dismissal for failure to state a claim under § 1915A.

Plaintiff's conspiracy claim is also subject to dismissal under the intracorporate conspiracy

doctrine. The intracorporate conspiracy doctrine states that employees of a single corporate entity

are legally incapable of conspiring together. Bond v. Bd. of Educ., No. 97 CV 1337, 1999 WL

151702, at *2 (W.D.N.Y. Mar. 17, 1999). "This doctrine applies to public entities and their

employees." Lee v. City of Syracuse, 603 F. Supp. 2d 417, 442 (N.D.N.Y. 2009) (citations

omitted). The Second Circuit has recognized the doctrine in the context of 42 U.S.C. § 1985,

Herrmann v. Moore, 576 F.2d 453, 459 (2d Cir. 1978); Girard v. 94th St. & Fifth Ave. Corp., 530

F.2d 66, 72 (2d Cir. 1976), but has not extended its application of the doctrine to conspiracy claims

under § 1983.  Several district courts in the Second Circuit have applied the doctrine, without

discussion, to § 1983 cases.  See Samms v. Fischer, No. 10-CV-0349, 2011 WL 3876528, at *15

n.8 (N.D.N.Y. Mar. 25, 2011) (collecting cases).  In Anemone v. Metropolitan Transportation

Authority, 419 F. Supp. 2d 602, 604 (S.D.N.Y. 2006), the Southern District squarely held that the

intracorporate conspiracy doctrine should be applied to § 1983 cases.  Like that court, in the absence

of any authority to the contrary, the Court

> will continue to apply the intracorporate conspiracy doctrine to Section 1983 claims
> because the doctrine's logic is sound.  A civil rights conspiracy requires an agreement
> between two or more actors to inflict an unconstitutional injury.  This 'two or more
> actors' requirement cannot be satisfied where all of the alleged conspirators are
> employees of a single entity and acting within the scope of their employment as agents
> of that entity.

Id. (citation omitted).

Even where the intracorporate conspiracy doctrine applies, there is an exception to the

doctrine where "individuals pursue personal interests wholly separate and apart from the entity."

Orafan v. Goord, 411 F. Supp. 2d 153, 165 (N.D.N.Y. 2006) (citation and quotation marks omitted),

vacated and remanded on other grounds, Orafan v. Rashid, 249 F. App'x 217 (2d Cir. 2007).

Plaintiff has not alleged that any of the unidentified Defendants were pursuing personal interests

wholly separate and apart from their DOCCS employment.  Because a better pleading will not cure

the deficiencies in Plaintiff's conspiracy claim, the claim is dismissed without leave to amend.

       *7.  State-Law Claims for Assault and Battery and Intentional Infliction of Emotional
         Distress*

Plaintiff has asserted state-law claims for assault and battery and intentional infliction of

emotional distress in connection with the Downstate incident.  Plaintiff's failure to connect the

events out of which his state-law claims arise to any particular named or Doe Defendants is fatal to

those claims.  Furthermore, Plaintiff's state-law claims are subject to dismissal under New York

Correction Law § 24.  Section § 24 provides:

> 1.  No civil action shall be brought in any court of the state, except by the attorney general on behalf of the state, against any officer or employee of the department, in his personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the discharge of the duties by such officer or employee.
> 2.  Any claim for damages arising out of any act done or the failure to perform any act within the scope of the employment and in the duties of any officer or employee of the department shall be brought and maintained in the court of claims as a claim against the state.

The statute precludes inmates from suing DOCCS employees in their personal capacity in

New York state courts.  Arteaga v. State, 527 N.E.2d 1194, 1199 (N.Y. 1988).  The bar has also

been found applicable to pendent state-law claims in federal court because "[i]n applying pendent

jurisdiction, federal courts are bound to apply state substantive law to the state claim."  Baker v.

Coughlin, 77 F.3d 12, 15 (2d Cir. 1996) (citations omitted).  "If a state would not recognize a

plaintiff's right to bring a state claim in state court, a federal court exercising pendent jurisdiction

. . . must follow the state's jurisdictional determination and not allow that claim to be appended to a

federal law claim in federal court."  Id. at 15.

In 2009, the U.S. Supreme Court held that Correction Law § 24 is unconstitutional to the

extent it precludes inmates from pursuing § 1983 claims.  Haywood v. Drown, 556 U.S. 729 (2009).

However, courts in this District have held that the Haywood decision does not affect the question of

the district court's jurisdiction to hear pendent state-law claims against DOCCS employees and

have continued to dismiss those claims under § 24.  See O'Diah v. Fischer, No. 08-CV-941, 2012

WL 987726, at *21 (N.D.N.Y. Feb. 28, 2012); Joy v. New York, No. 09-CV-841, 2010 WL

3909694, at *4-5 (N.D.N.Y. Sept. 30, 2010); Gillard v. Rovelli, No. 09-CV-0860, 2010 WL

4905240, at *16 (N.D.N.Y. Sept. 29, 2010); Crump v. Ekpe, No. 07-CV-1331, 2010 WL 502762, at

*18 (N.D.N.Y. Feb. 18, 2010).  For the reasons set forth in those decisions, the Court dismisses

Plaintiff's state-law claims arising out of the Downstate incident without leave to amend.

### D.  Denial of Dental Care at Adirondack Correctional Facility[23]

Plaintiff has alleged that while he was confined at Downstate, he had a tooth fall out and

was told he would need a root canal or surgery.[24]  Am. Compl. at 13.  When he was transferred from

Downstate to Adirondack Correctional Facility ("Adirondack"), Plaintiff was sent to the medical

facility where he was asked by an unidentified doctor[25] if he wanted to see a dentist.  Id.  Plaintiff

saw the doctor check or write "no" even though Plaintiff had answered in the affirmative.  Id.

Afterwards, while in the receiving area, Plaintiff repeatedly asked unidentified correctional officers

for a slip to write a request for a dentist on, and his request for the slip was denied.  Id.  Plaintiff has

not alleged any physical harm as a result of the incident, nor does the Amended Complaint include

any factual allegations regarding whether he actually needed or ended up having a root canal.

The Court construes the Amended Complaint as alleging an Eighth Amendment medical

---

[23] Defendants have identified Plaintiff's denial of dental-care claim as "Incident 2(A)." Defs.' Mem. at 3.

[24] In his Response, Plaintiff acknowledged that the allegation that he lost a tooth may be erroneous—that he may actually have lost a filling. Resp. at 19.  Plaintiff continues to claim that he was told he needed a root canal, however.  Id.

[25] There is no indication in the Amended Complaint that the doctor is either a named or a Doe Defendant.

indifference claim against an unidentified doctor and unnamed corrections officers.[26]  As in the case of Plaintiff's Downstate claim, his failure to identify the individuals involved in the denial of his request to see a dentist is fatal to his claim.  See Alfaro, 814 F.2d at 886.  Even if it were not, Plaintiff has not alleged facts sufficient to state a facially plausible claim for violation of his Eighth Amendment rights.

In fulfilling their Eighth Amendment duty to "provide humane conditions of confinement" to prisoners, prison officials must ensure that inmates receive adequate medical care.  Farmer, 511 U.S. at 832 (citing Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).  There are two elements to a prisoner's claim that prison officials violated her Eighth Amendment right to receive medical care: "the plaintiff must show that she or he had a serious medical condition and that it was met with deliberate indifference."  Caiozzo v. Koreman, 581 F.3d 63, 72 (2d Cir. 2009) (citation and punctuation omitted).  "The objective 'medical need' element measures the severity of the alleged deprivation, while the subjective 'deliberate indifference' element ensures that the defendant prison official acted with a sufficiently culpable state of mind."  Smith v. Carpenter, 316 F.3d 178, 183-84 (2d Cir. 2003).

A "serious medical condition" is "a condition of urgency, one that may produce death, degeneration, or extreme pain."  Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990) (Pratt, J. dissenting) (citations omitted); accord Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998); Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  There is no bright-line test to measure the seriousness of a prisoner's medical condition.  Stevens v. Goord, 535 F. Supp. 2d 373, 383 (S.D.N.Y. 2008).  However, the Second Circuit has set forth factors to consider when determining

---

[26] There is nothing in the Amended Complaint indicating that the corrections officers are either named or Doe Defendants.

whether an alleged medical condition is sufficiently serious, including but not limited to: (1) the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; (2) the presence of a medical condition that significantly affects an individual's daily activities; and (3) the existence of chronic and substantial pain.  Chance, 143 F.3d at 702.  Inquiry into whether a plaintiff had a serious medical need "must be tailored to the specific circumstances of each case."  Smith, 316 F.3d at 185.

Plaintiff has not alleged facts showing that he had a serious medical condition, *i.e.*, that he had a medical condition that affected his daily activities, that he was in any pain, or that the actions of the unidentified doctor and corrections officers had any negative impact whatsoever on his health.[27]  Therefore, even if Plaintiff had identified those involved in the alleged denial of dental treatment, he has not stated a claim for medical indifference, and his claim arising out of the denial of his request for dental care is hereby dismissed with leave to amend granted in light of his *pro se* status.

**E. Aubrey and Adirondack Law Library Incidents**[28]

While confined at Adirondack, Plaintiff began writing a joint letter to the Superintendent with an inmate named Aubrey.  Am. Compl. at  13-15.  Plaintiff thought that because the officers at Adirondack appeared racist, it would help his cause to write jointly with Aubrey, who is white.  Id. at 13-14.  Plaintiff had written a draft statement of facts when he was told by the steady officer in the law library that state rules did not allow inmates to write together.  Id. at 13.

---

[27] Given Plaintiff's failure to plead facts satisfying the objective element of the Eighth Amendment medical indifference claim, consideration of whether Plaintiff has alleged facts adequate to satisfy the subjective element of deliberate indifference is unnecessary.

[28] Defendants have identified the Aubrey and Adirondack law library incidents as "Incidents 3(B)-(D)."  Defs.' Mem. at 3-4.

Two months later, Plaintiff, who had filed several grievances concerning the hours during which the law library was open, came back from breakfast to find his legal work related to his criminal appeal and several civil lawsuits spread on his bed, being read by unidentified corrections officers. Id. at 14. One of the corrections officers ripped out the draft of the document concerning Aubrey. Id. None of Plaintiff's own legal work was taken. Id. Plaintiff claims that the search was illegal and may have been in retaliation for his grievances concerning the law library. Id. Three or four days later, a misbehavior report was filed against Plaintiff for having another inmate's legal work. Id.

Aubrey, against whom no misbehavior report was filed, informed officers that Plaintiff might have Aubrey's legal brief, which Plaintiff claims was a lie that Aubrey had been told to tell by unidentified corrections officers. Id. at 14-15. An officer from the law library testified at Plaintiff's disciplinary hearing that Plaintiff had been told not to finish Aubrey's work two months earlier. Id. According to Plaintiff, the civilian hearing officer made it appear that Plaintiff had Aubrey's legal papers and suggested that she had not been trained to review evidence. Id. at 15. Plaintiff was found guilty and sentenced to a thirty-day loss of privileges and forty-five days of keeplock in his cell. Id.

Plaintiff also contends that in retaliation for filing grievances concerning the law library, Defendant Donald Maher ("Maher") told Italian, Jamaican, and Hispanic inmates that Plaintiff was keeping them from using the law library, causing a grievance to be filed against him and creating problems that could have escalated to a fight. Id. at 16. Plaintiff further claims that unidentified correction officers on 3C called Plaintiff a "snitch" and required him to submit to a drug test. Id. at 19. In addition, according to Plaintiff, in August 2010, while at Adirondack, he was verbally

harassed by Jamaican Christians, Italians, "rednecks," and correction officers; his belongings were damaged by inmates and correction officers while he was away in programs; and correction officers were not allowing inmates full use of the computers or allowing inmates to type up grievances in the library. Id. at 16-17.

In his Amended Complaint, Plaintiff has asserted the following claims arising out of the Aubrey and Adirondack law library incidents: (1) a selective-enforcement equal-protection claim; (2) Fourth Amendment illegal search and seizure and First Amendment retaliation claims; (3) a conspiracy claim; (4) a claim for supervisory officials' failure to train, etc.; (5) a claim for harassment and destruction of personal property by corrections officers; (6) a claim for false misbehavior report in retaliation for filing library grievances; (7) a claim regarding Defendant Maher and unidentified corrections officers' comments about Plaintiff to other inmates and corrections officers in retaliation for grievances; and (8) state-law claims for fraud and intentional infliction of emotional distress.

### 1. *Selective-Enforcement Equal-Protection Claim*

Plaintiff has asserted a selective-enforcement equal-protection claim with regard to the misbehavior report filed against him because no misbehavior report was filed against Aubrey. Dkt. No. 50 at 13. To state a claim for selective enforcement under the Equal Protection Clause, a plaintiff must allege facts making a plausible showing both that he was "(1) . . . treated differently from other similarly situated [individuals] and (2) that such differential treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." Cine Sk8, Inc. v. Town of Henrietta, 507 F.3d 778, 790 (2d Cir. 2007) (citation and internal quotation marks omitted).

Plaintiff has failed to plead a plausible selective-enforcement equal-protection claim. For one thing, as with so many of his claims, Plaintiff has failed to connect the issuance of the misbehavior report to any particular named or Doe Defendant. That alone requires dismissal of his claim. See Alfaro, 814 F. 2d at 886. In addition, Plaintiff has failed to make a plausible showing that Aubrey was similarly situated for purposes of a selective-enforcement equal-protection claim. The allegations in the Amended Complaint reveal that it was Plaintiff who wrote the statement of facts for the joint letter and Plaintiff who was told that writing a joint letter was not permitted under state rules. Id. It was also Plaintiff who had the draft letter in his cell after being told that a joint letter was against the rules. Id. The Amended Complaint is devoid of allegations showing that Aubrey had any of Plaintiff's legal documents, that he actively participated in activities that led to the issuance of the misbehavior report, or that he engaged in any conduct that would render him similarly situated to Plaintiff. Defendants are therefore entitled to dismissal of Plaintiff's selective-enforcement equal-protection claim, although in light of his *pro se* status, Plaintiff is granted leave to amend.

### 2. Illegal Search and Seizure and Retaliation

Plaintiff claims that the search of his cell and review of his legal documents by unidentified corrections officers violated his Fourth Amendment rights and may have been in retaliation for his complaints about the law library at Adirondack. Am. Compl. at 14. Again, Plaintiff's failure to identify particular named or Doe Defendants as having been involved in the search of his cell and reading of his legal papers is in and of itself fatal to his claim. See Alfaro, 814 F.2d at 886.

Furthermore, "[i]t is well-settled that the prohibition against unreasonable searches and seizures does not apply to a prison cell." Hudson, 468 U.S. at 526. Although the issue has not been

decided by the Second Circuit, many of the district courts in the Circuit have concluded that since prisoners have *no* constitutional protection from cell searches, even those searches conducted for retaliatory reasons do not give rise to a constitutional claim.  See Bumpus v. Canfield, 495 F. Supp. 2d 316, 327 (W.D.N.Y. 2007) (holding that a cell search done for retaliatory reasons does not implicate a constitutional right since a prisoner has no reasonable expectation of privacy in his prison cell); Lashley v. Wakefield, 367 F. Supp. 2d 461, 470 (W.D.N.Y. 2005) (same).  Therefore, even though filing grievances concerning the library constituted protected First Amendment conduct for purposes of a retaliation claim, the search of Plaintiff's cell and removal of only the Aubrey draft letter, leaving Plaintiff's legal documents intact, was not adverse action for purposes of a retaliation claim, and the claim must be dismissed without leave to amend.  See Pidlypchak, 389 F.3d at 380.

There are, however, cases protecting a prisoner's right to privacy in legal correspondence. See Bayron v. Trudeau, 702 F.2d 43, 46 (2d Cir. 1983) (noting the existence of cases protecting a prisoner's right to privacy in legal correspondence).  While it cannot be determined based upon the Amended Complaint whether the alleged reading of Plaintiff's legal documents constitutes an adverse action for purposes of a retaliation claim in this case, the Court finds that Plaintiff should be granted leave to amend with regard only to the alleged reading of his legal papers.

### 3. Conspiracy

Plaintiff contends unidentified Defendants conspired to convince Aubrey to deny: that Plaintiff had been alerted that he was not allowed to write a joint letter with Aubrey two and a half months prior to the issuance of the misbehavior report; that Plaintiff had complied; that Plaintiff had not been told to throw away the document at that time; and that the document had not been taken

away from Plaintiff at the time he was told that writing the joint letter was against state rules.  Am. Compl. at 45.  Defendants have moved for dismissal of the conspiracy claim.  Defs.' Mem. at 24.

Plaintiff's failure to identify the named or Doe Defendants alleged to be part of the claimed conspiracy alone requires dismissal of the claim.  See Alfaro, 814 F.2d at 886.  Furthermore, Plaintiff's Amended Complaint contains only vague and conclusory allegations with respect to the alleged conspiracy.  Such allegations are insufficient to state a facially plausible conspiracy claim.  See Leon, 988 F.2d at 311 (conclusory allegations of conspiracy cannot withstand a motion to dismiss).  Finally, Plaintiff's conspiracy claim is barred under the intracorporate conspiracy doctrine.  See Anemone, 419 F. Supp. 2d at 604.  For all of these reasons, Plaintiff's conspiracy claim is dismissed without leave to amend.

### 4.  Claim Against Supervisors for Failure to Train, Etc.

Plaintiff's failure-to-train, etc., claim asserted with regard to the Aubrey and Adirondack law library claim suffers from the same defects as Plaintiff's Downstate failure-to-train claim and is therefore dismissed.  See supra Part III.C.3.  In light of his pro se status, however, Plaintiff is granted leave to amend this claim as well.

### 5.  Harassment and Destruction of Personal Property by Corrections Officers

Plaintiff claims he was harassed by corrections officers while using the law library at Adirondack, and that corrections officers and inmates friendly with them ripped up Plaintiff's clothes and footwear while he was in programs.  Am. Compl. at 16.  "Verbal harassment itself does not rise to the level of a constitutional violation.  Verbal abuse, vulgarity, and even threats are insufficient to rise to the level of constitutional violations."  DeJesus v. Tierney, No. 04-CV-298, 2006 WL 839541, at *11 (N.D.N.Y. Mar. 28, 2006); see also Ramirez v. Holmes, 921 F. Supp. 204,

210 (S.D.N.Y. 1996) ("Allegations of threats or verbal harassment, without any injury or damage, do not state a claim under 42 U.S.C. § 1983.").

Furthermore, since New York "affords an adequate post-deprivation remedy in the form of, *inter alia*, a Court of Claims action[, Plaintiff's] failure to pursue this adequate state remedy . . . precludes his claim [for damage to or destruction of his shoes and clothing] under Section 1983." Jackson v. Burke, 256 F.3d 93, 96 (2d Cir. 2001).  Plaintiff's claims for harassment and destruction of property are therefore dismissed without leave to amend.

*6. False Misbehavior Report in Retaliation for Filing Library Grievances*

Plaintiff claims that unidentified corrections officers issued a misbehavior report claiming he possessed Aubrey's legal work in retaliation for grievances Plaintiff filed with regard to the law library.  Am. Compl. at 14-15.  Plaintiff's failure to name any particular Defendants as being involved in the retaliatory issuance of a false misbehavior report requires dismissal of his claim. See Alfaro, 814 F.2d at 886.

However, Plaintiff's filing of grievances regarding the law library is protected First Amendment activity for purposes of a retaliation claim, Colon, 58 F.3d at 872, and the filing of a false misbehavior report is an adverse action for retaliation purposes.  Pidlypchak, 389 F.3d at 384. Furthermore, reviewing Plaintiff's Amended Complaint liberally to raise the strongest arguments it suggests, it appears that were Plaintiff able to amend to identify the particular Defendants involved and allege facts supporting a causal connection between the filing of the grievances and the false misbehavior report, he may well be able state a viable claim for retaliation.  Therefore, while Plaintiff's retaliation claim must be dismissed, leave is granted to amend.

Plaintiff has also complained of the manner in which the female civilian hearing officer

construed the evidence, suggesting that she may not have been properly trained.  Id.  Although the

hearing officer is not mentioned by name in the body of Plaintiff's Amended Complaint, Defendant

Pellerin is identified as the civilian hearing officer at Adirondack in the caption.  Id. at 2.  The facts

alleged by Plaintiff do not support a plausible claim of denial of due process against Pellerin.  The

minimal due process requirements for a prison disciplinary hearing include:

> (a) written notice of the claimed violations . . . ; (b) disclosure [to the prisoner] of
> evidence against him; (c) opportunity to be heard in person and to present witnesses and
> documentary evidence; (d) the right to confront and cross-examine adverse witnesses
> (unless the hearing officer specifically finds good cause for not allowing confrontation);
> (e) a neutral and detached hearing body . . . ; and (f) a written statement by the fact
> finders as to the evidence relied on . . . .

Wolff v. McDonald, 418 U.S. 539, 559 (1974).  The facts alleged by Plaintiff show at most a

mistake on Defendant Pellerin's part and do not state a plausible claim that she violated Plaintiff's

right to due process.  The Amended Complaint is therefore dismissed as against Defendant Pellerin

without leave to amend.

> 7. *Defendant Maher and Other Corrections Officers' Comments About Plaintiff to*
> *Other Inmates as Retaliation*

According to Plaintiff, in retaliation for Plaintiff's filing of grievances concerning the

library, Defendant Maher told inmates from various ethnic groups that Plaintiff was keeping them

from using the library.  Am. Compl. at 19.  In addition, unidentified corrections officers called

Plaintiff a "snitch" in front of other inmates.  Id.

Although Plaintiff's filing of grievance constitutes protected First Amendment conduct for

retaliation purposes, Davis v. Goord, 320 F.3d 346, 352-53 (2d Cir. 2003), superceded by 320 F.3d

346 (2d Cir. 2003), verbal harassment, including telling other inmates that a plaintiff is a stoolie or a

snitch, and spreading rumors about an inmate are generally insufficient to show adverse action for

36

purposes of a First Amendment retaliation claim.  See, e.g., Morales v. Mackalm, 278 F.3d 126, 132 (2d Cir. 2002) (holding that calling plaintiff a "stoolie" in front of other inmates is not conduct that would deter an individual of ordinary firmness from exercising his constitutional rights), abrogated on other grounds sub nom Porter v. Nussle, 534 U.S. 516, 532 (2002); Dawes, 239 F.3d at 493 (holding that calling plaintiff an "informant" and a "rat" is not sufficiently adverse to support a retaliation claim); Williams v. Muller, No. 98 Civ. 5204, 2001 WL 936297, at *3 (S.D.N.Y. Aug. 17, 2001) (finding the alleged spreading of rumors about plaintiff not sufficiently adverse to support a retaliation claim).

Because verbal harassment, bad-mouthing and name calling, and the spreading of rumors by Defendant Maher and other corrections officers do not qualify as adverse actions for retaliation purposes, Plaintiff's retaliation claim against Defendant Maher is dismissed without leave to amend.

### 8. State-Law Claims for Fraud and Intentional Infliction of Emotional Distress

Plaintiff claims that unidentified Defendants committed fraud by taking legal documents (presumably the draft of the joint letter with Aubrey) out of a pad and representing them as someone else's legal documents (presumably Aubrey's) at Plaintiff's disciplinary hearing.  Am. Compl. at 45. Plaintiff also asserts a claim against unidentified Defendants for intentional infliction of emotional distress because he was given thirty day's loss of privileges and forty-five days in keeplock as a result of the misbehavior report filed in connection with his possession of the Aubrey draft.  Id. Plaintiff's state-law claims are dismissed without leave to amend based upon New York Correction Law § 24.[29]  See supra Part III.C.7.

---

[29] The claims are also subject to dismissal for failure to identify any named or Doe Defendants alleged to be involved.

**F. Excessive Force by Defendants Maher and Allen**[30]

On August 10, 2010, when Plaintiff went into the Adirondack law library, Defendant Maher called him an asshole for filing so many grievances.[31]  Am. Compl. at 20.  As Plaintiff was typing up copies of an order to show cause in an Article 78 proceeding, Defendant Maher asked him what he was working on.  Id.  Defendant Maher continued to call Plaintiff an asshole.  Plaintiff politely told Maher to move out of his way, at which point Defendant Maher slapped Plaintiff's paperwork stating that he did not take "sh[it]" from inmates and called for back-up.  Id. at 21.

Defendants Maher and David Allen ("Allen"), along with five or six unidentified corrections officers, grabbed Plaintiff, shoved him into the hallway, pushed his head repeatedly into the wall, and kicked his legs open several times.  Id.  Allen handcuffed Plaintiff and hit him on the back and shoulders while Defendant Maher punched Plaintiff in the presence of four or five correction officers.  Id.  It can reasonably be inferred that the corrections officers were Defendants John Doe #1,#2, and #4 and Jane Doe #3, who Plaintiff has alleged in his Amended Complaint were present during the use of excessive force at Adirondack.  Id. at 3.  However, there are no facts alleged in Plaintiff's Amended Complaint supporting a facially plausible claim against the Doe Defendants for failure to intervene.

After the incident with Defendants Maher and Allen, Plaintiff was taken to the infirmary where he was forced to sign a document stating he was not hurt, even though his back was hurt.  Id.  According to Plaintiff, he was surrounded by corrections officers at the time and felt that if he did

---

[30] Defendants have identified Plaintiff's excessive-force claim against Defendants Maher and Allen as "Incident 3."  Defs.' Mem. at 4-5.

[31] Verbal abuse, even when vulgar, does not rise to the level of a constitutional violation.  See DeJesus, 2006 WL 839541, at *11.

not play along he would be killed.  Id.  Plaintiff was then placed in the Special Holding Unit

("SHU") and taken to Upstate Correctional Facility ("Upstate") the following day.  Id.

The Court construes the Amended Complaint as alleging claims for use of excessive force

by Defendants Maher and Allen.  Defendants have not moved to dismiss the claim, and the Court

finds that Plaintiff has alleged facts plausibly stating an Eighth Amendment excessive-force claim

against Defendants Maher and Allen.[32]  Furthermore, while Plaintiff has not alleged facts sufficient

to state a claim for failure to intervene against the Doe Defendants, he has identified them as being

present during the time of the alleged excessive force.  The Court grants Plaintiff leave to amend to

assert a claim for failure to intervene if he is able to make factual allegations supporting a claim.

### G.  False Misbehavior Report and Denial of Due Process at Adirondack[33]

Plaintiff was charged in a misbehavior report with refusing a pat frisk as a result of the

incident involving Defendants Maher and Allen at Adirondack.  Id. at 22.  Plaintiff denies that he

refused a pat frisk.  Id.  Plaintiff's hearing on the charge was held at Upstate.[34]  Id.  Plaintiff claims

that the hearing was held beyond the seven-day deadline imposed where an inmate is being held in

keeplock and thus the charge should have been dismissed.  Id.  At the hearing, Plaintiff attempted to

---

[32] Plaintiff has also asserted state-law claims for assault and battery, intentional infliction of emotional distress, and abuse of process in connection with the excessive-force incident.  Am. Compl. at 46-47.  Those claims are dismissed pursuant to New York Correction Law § 24 without leave to amend.  See supra Part III.C.7.  Plaintiff's failure-to-train claim against supervisory Defendants arising out of the incident are also dismissed without leave to amend.  See White, 2010 WL 624081, at *6 (holding that conclusory allegations that a supervisor failed to train or properly monitor the actions of subordinates do not establish the requisite personal involvement to support liability).

[33] Defendants have identified the excessive-force incident involving Defendants Maher and Allen as "Incident 4."  Defs.' Mem. at 5.

[34] Plaintiff has sued the hearing officer as John Doe #7.  Am. Compl. at 3, 8.

show a pattern of problems with disciplinary hearings, namely, that the disciplinary tickets were not filed under penalty of perjury and hearing witnesses were not placed under oath.  Id.

Plaintiff also alleged that he was not given an answer to his question of whether there was a videotape of the law library area at Adirondack and was denied the library call out sheet that would have identified inmate witnesses who overheard Defendant Maher call Plaintiff an asshole and would have seen that Plaintiff did not respond.  Id.   In addition, Plaintiff claims that the hearing officer was biased and racist.  Id. at 47.

Defendants have moved to dismiss Plaintiff's false misbehavior report and denial-of-due-process claim on the grounds that Plaintiff has not alleged a retaliatory motive or asserted a protected liberty interest.[35]  Although the Amended Complaint does not specifically identify the named or Doe Defendants allegedly responsible for the misbehavior report, it can be reasonably inferred from the Amended Complaint for purposes of this Motion that it was Defendant Maher or Defendant Allen, or both, since the misbehavior report arose out of the excessive force incident at Adirondack involving both Defendants.  See id. at 20-23.

While Plaintiff's Amended Complaint includes numerous allegations regarding denial of his right to call witnesses and present evidence, Plaintiff has again failed to meet his threshold burden of alleging facts plausibly showing that he experienced an atypical and significant hardship implicating a protected liberty interest, see Sandin, 515 U.S. at 484, in this instance because the Amended Complaint does not disclose the penalty, if any, imposed as a result of the disciplinary hearing.  Plaintiff's false misbehavior report and denial-of-due-process claim against Defendants

---

[35] Plaintiff has also alleged a conspiracy to deny his due process rights in connection with the disciplinary hearing.  Am. Compl. at 46.  Plaintiff's conspiracy claim is dismissed without leave to amend on the grounds that it is wholly conclusory and barred under the intracorporate conspiracy doctrine.  See Leon, 988 F.2d at 311; Anemone, 419 F. Supp. 2d at 604.

Maher and Allen and any unidentified named or Doe Defendants and his claim against Defendant John Doe #7 must therefore be dismissed for failure to allege a protected liberty interest. However, in light of Plaintiff's *pro se* status, the possibility that he may be able to allege a liberty interest, and the allegations in the Amended Complaint which suggest possible due process insufficiencies in the disciplinary hearing, leave to amend is granted.[36]

### H. Failure to Move Plaintiff in a Timely Manner When He Felt Threatened by His Cell Mate[37]

While Plaintiff was at Upstate, he was housed with an inmate who was serving forty-two years to life and had several positive drug test results. Am. Compl. at 24. Plaintiff felt threatened by the inmate's general attitude toward him and corrections officers, as well as the inmate's connection to the Bloods gang. Id. Plaintiff wrote to the gallery officer every day for a month and a half asking to be moved before finally filing a grievance. Id. During the time Plaintiff was housed with the inmate, there was an incident in which Plaintiff had been given the wrong laundry bag in front of the inmate, and the inmate tried to make it appear as though Plaintiff had taken contraband from the bag. Id. Plaintiff was finally moved after one and a half months. Id. Plaintiff claims that he suffered from anxiety and emotional distress as a result of being housed with the inmate.[38] Id.

The Court construes Plaintiff's claim as one for a failure to protect him from serious harm in

---

[36] See Wolff, 418 U.S. at 559.

[37] Defendants have identified the failure to protect incident as "Incident 5." Defs.' Mem. at 5.

[38] 42 U.S.C. § 1997e(e), as construed by the Second Circuit, does not allow compensatory damages in § 1983 actions absent a showing of physical injury. Thompson v. Carter, 284 F.3d 411, 416 (2d Cir. 2002). In the absence of physical injury, recovery is limited to nominal or punitive damages. Id. Compensatory damages for emotional distress, unaccompanied by physical injury, are not allowed.

violation of his Eighth Amendment rights.  Plaintiff has implicated Defendants John Doe # 5 and

John Doe # 6 in his failure-to-protect claim.  Id. at 3.  However, the Amended Complaint does not

contain any allegations specifically directed toward those Doe Defendants unless one of them was

the gallery officer.  Id. at 24.  Since Plaintiff must allege facts showing a defendant's personal

involvement in order to state a viable claim, his failure to do so requires dismissal of his failure to

protect claim.  Bass, 790 F.2d at 263 (holding that a plaintiff must show a tangible connection

between a defendant and the constitutional violation on a § 1983 claim).

The allegations in Plaintiff's Amended Complaint do not state a facially plausible claim for

failure to protect in any event.  Corrections officers do have a clearly established duty "to protect

prisoners from violence at the hands of other prisoners."  Farmer, 511 U.S. at 833.  However,

Plaintiff has alleged only that he felt threatened by his cell mate, not that his cell mate ever

threatened to or actually caused Plaintiff bodily harm.  Am. Compl. at 24.  Living in fear of being

assaulted by a cell mate has been found not to be objectively serious enough to support an Eighth

Amendment violation.  Bolton v. Goord, 992 F. Supp. 604, 627 (S.D.N.Y. 1998).

Therefore, Plaintiff's failure to protect claim is dismissed with leave to amend.

### H.  Mess Hall Line Incident[39]

Plaintiff claims that when he was moved to Coxsackie Correctional Facility ("Coxsackie"),

he was not given a proper orientation.  Am. Compl. at 25.  As a result, Plaintiff was unfamiliar with

the odd-to-even mess hall line formation.  When Defendant Bushane told Plaintiff he had switched

line formation, Plaintiff had no idea what Defendant Bushane was talking about.  Id.  Plaintiff, who

was then placed in keeplock by Defendant Bushane, asked for food and a grievance form.  Id.

---

[39] Defendants have identified the mess hall line incident at Coxsackie Correctional Facility as "Incident 6."  Defs.' Mem. at 5-6.

Defendant Bushane allegedly said, "I'm gonna get Nigger before he gets me." Id.  A misbehavior report was filed accusing Plaintiff of having said, "I don't want to eat.  I feel I might hurt someone," and, "I just sued some punkass police like you.  I'll get my Jew attorney after you." Id.  Plaintiff claims that what he actually said was, "Can I have [a] grievance form, I don't mind writing, filing a[n] Order to Show Cause, filing a lawsuit, getting a Jewish attorney." Id.

Defendant McDermott was the hearing officer on the misbehavior report arising out of the mess hall line incident. Id.  Defendant McDermott did not inform Plaintiff he could have access to a videotape of the hallway that could show whether Plaintiff had crossed odd or even. Id.  At the hearing, Plaintiff attempted to explain to Defendant McDermott that Plaintiff had not said he was afraid he might hurt someone—that everyone around him was Hispanic, and if he had said something like that it would have caused a riot because Plaintiff is a "Black American mixed West Indian." Id.  Plaintiff also told Defendant McDermott that since Plaintiff had no money or commissary at the time, there was no way he would have said he did not want to eat. Id.  Plaintiff believed the government should be investigating whether the event occurred and that Defendant McDermott should have required witnesses at the hearing to testify under penalty of perjury. Id.  Defendant McDermott found Plaintiff guilty and gave him thirty days in keeplock. Id.

The Court construes Plaintiff's mess hall line claim as one against Defendant Bushane[40] for filing a false misbehavior claim in retaliation for Plaintiff's asking for a grievance form and threatening a lawsuit and against Defendant McDermott for denial of due process.

Although it is unclear from the allegations in Plaintiff's Amended Complaint whether he can

---

[40] Defendant Bushane has not been served in this lawsuit and is not a party to the Motion to dismiss.  Plaintiff's claim against Bushane for filing a retaliatory false misbehavior report is nonetheless examined under 28 U.S.C. § 1915A.

ultimately prevail on a retaliation claim against Defendant Bushane, there is enough of a question

that *sua sponte* dismissal under § 1915A is not warranted.  Plaintiff's request for a grievance form

and implied threat to sue arguably constitute protected First Amendment conduct.  See Davis, 320

F.3d at 353 (holding that filing a grievance is protected First Amendment conduct); Johnson, 2010

WL 2628720, at *6 (holding that a threat of litigation can constitute protected First Amendment

conduct).  Furthermore, the filing of a misbehavior report which results in an inmate being placed in

keeplock for thirty days has been found sufficient to satisfy the adverse action element of a

retaliation claim.  See Jeffrey v. Ahmed, No. 09-CV-0327, 2011 WL 4390220, at *11 (N.D.N.Y.

Aug. 22, 2011).  The allegations in the Amended Complaint regarding the temporal relationship

between Plaintiff's alleged comments and the issuance of a misbehavior report are sufficient to

allow Plaintiff's retaliation claim to go forward.  In allowing the claims to go forward, however, the

Court expresses no opinion as to whether the claim could survive a properly brought motion to

dismiss or for summary judgment should Defendant Bushane ultimately be served in the lawsuit.

Plaintiff's denial-of-due-process claim should, however, be dismissed because Plaintiff has

failed to meet his threshold burden of alleging facts plausibly showing that he experienced an

atypical and significant hardship implicating a liberty interest under Sandin.  Plaintiff was given

thirty days in keeplock at the disciplinary hearing, which district courts in New York have

consistently held does not implicate a protected liberty interest, even in the absence of detailed

factual development of the conditions of confinement.  See Brown, 2010 WL 6428251, at *9.

However, in light of Plaintiff's *pro se* status, leave to amend is granted.[41]

---

[41] The allegations in the Amended Complaint do not suggest that the thirty-day sentence overlapped with or directly followed another period of keeplock, thereby requiring aggregation for purposes of ascertaining whether "refined fact-finding" is necessary to determine whether conditions were atypical and a significant hardship under Sandin.  See Howard, 215 F.3d at 230.

### I. Clogged-Toilet Charge[42]

While at Coxsackie, Plaintiff was transferred from the F2/F3 gallery to the C3 gallery. Am. Compl. at 26. Forty-five minutes after arriving in C3 gallery, Plaintiff was told that he had clogged his toilet in the F3 block and was placed in keeplock. Id. Defendant Lewis wrote a disciplinary ticket stating that Plaintiff's cell was searched immediately after he left and that the toilet would not flush. Id. According to Plaintiff, the misbehavior report said nothing about there being plastic or paper in the toilet. Id. Plaintiff claimed that the toilet did not work well and denied clogging it. Id. at 27.

Plaintiff wanted to call Corrections Officer Ortiz as a witness at the hearing to testify that all of the toilets in F2/F3 did not work well, but Defendant McDermott, the hearing officer, would not allow it. Id. Plaintiff contends that Defendant Lewis lied at the hearing, stating for the first time that there was plastic and paper in the toilet when he checked it five minutes after Plaintiff left. Id. Plaintiff believes that Defendant Lewis was told to say that by McDermott. Id. At the hearing, Plaintiff questioned the plumber about not having a report. Id. The plumber left for twenty-five minutes and came back with documentation. Id. Plaintiff objected because the plumber could have made something up while he was gone. Id. Plaintiff also objected because the misbehavior reports are not submitted under penalty of perjury and hearing testimony is not made under oath. Id. at 27-28. Plaintiff was given a punishment of thirty days in keeplock. Id. at 28.

---

Plaintiff was put in keeplock when the mess hall line incident occurred, suggesting that he was not already in keeplock at that point. Id. at 25. Furthermore, the allegations relating to the clogged-toilet incident at Coxsackie, which follows in Plaintiff's Amended Complaint, indicate that Plaintiff was not placed in keeplock until after he moved to a new cell block and was told that he had clogged the toilet in his old cell. Am. Compl. at 26. Nonetheless, because of Plaintiff's *pro se* status, the Court finds he should be allowed to amend.

[42] Defendants have identified the toilet-clogging incident as "Incident 7." Defs.' Mem. at 6.

The Court construes Plaintiff's clogged-toilet claim as one against Defendant Lewis[43] for the filing of a false misbehavior report and against Defendant McDermott for denial of due process. Plaintiff has not alleged facts plausibly suggesting that Defendant Lewis filed the false misbehavior report against him for retaliatory reasons. Thus, because Plaintiff has no general constitutional right to be free from being falsely accused in a misbehavior report, see Boddie, 105 F.3d at 862, he must show that he was disciplined without adequate due process because of the report. See Franco, 854 F.2d at 587.

As with his other due process claims, because Plaintiff was sentenced to only thirty days in keeplock, he has not satisfied the threshold burden of making a plausible showing that he experienced an atypical and significant hardship implicating a protected liberty interest under Sandin. Brown, 2010 WL 6428251, at *9. Therefore, Plaintiff's claim against Defendant Lewis for filing a false misbehavior report is dismissed under § 1915A, and his due process claim against Defendant McDermott is dismissed under Rule 12(b)(6) for failure to state a claim. While there are no allegations in Plaintiff's Amended Complaint suggesting that the thirty-day keeplock sentence should be aggregated for purposes of applying Sandin, in light of his *pro se* status, Plaintiff is granted leave to amend so that he might allege facts showing that the thirty-day keeplock sentence should be aggregated with other disciplinary segregation.

### J. Inmate-Count Incident[44]

Plaintiff claims that while he was at Coxsackie, Defendant Schurrs called the count ten

---

[43] Defendant Lewis has not been served in this lawsuit and is not a party to the Motion to dismiss. Plaintiff's claim against him for filing a false misbehavior report is nonetheless subject to examination under § 1915A.

[44] Defendants have identified the inmate-count incident as "Incident 8." Defs.' Mem. at 6. Plaintiff has identified the inmate-count incident as "Incident 3" in his Amended Complaint.

minutes early at 10:20 P.M. one day.  Am. Compl. at 28.  Plaintiff did not see or hear Defendant

Schurrs call count and started toward the front area.  He got ten to fifteen feet when inmate Ortiz

mouthed "count," at which point Plaintiff turned around and saw Defendant Schurrs watching

television and not doing the count.  Id.  Plaintiff then heard Defendant Schurrs say, "[T]hat's it!  I'm

locking your crazy ass up.  You always <u>fucked</u> with me."  Id. (emphasis in original).  Plaintiff said

nothing and started to pack.  He went to keeplock because Defendant Schurrs filed a misbehavior

report stating that Plaintiff had said, "I cleared the count myself I have something to do."  Id.

According to Plaintiff, he had previously written to the Inspector General concerning a claim that he

had been erroneously confined by Defendant Schurrs.  Id.

   Plaintiff called Ortiz, a fellow inmate, as a witness at his disciplinary hearing.  Id. at 29.

Plaintiff claims that forcing Ortiz to sit in a cage for one and a half hours before testifying

constituted witness intimidation.  Id.  Ortiz testified favorably to Plaintiff.  See id.  However,

another inmate witness called by Plaintiff, whom Plaintiff has described as being in Defendant

McDermott's pocket, testified in a manner detrimental to Plaintiff.  Id.  Defendant McDermott did

not allow Plaintiff to impeach his own witness or to attempt to refresh his witness's recollection.

Id.  Plaintiff was given thirty day's keeplock by Defendant McDermott.

   The Court construes Plaintiff's claim as one against Defendant Schurrs[45] for the filing of a

false misbehavior report in retaliation for a protected First Amendment communication to the

Inspector General and against Defendant McDermott for the denial of due process in the

disciplinary hearing.  Defendant Schurrs is not a party to Defendants' Motion to dismiss, and the

---

[45] Defendant Schurrs has not been served in this lawsuit and is not a party to the Motion to dismiss.  Therefore, Plaintiff's claim against him for filing a retaliatory false misbehavior report is examined under § 1915A.

Court finds that the claim is not subject to dismissal under 28 U.S.C. § 1915A.[46]

Defendant McDermott is a party to Defendants' Motion to dismiss and is entitled to dismissal of Plaintiff's denial-of-due-process claim.  As with his other claims for denial of due process, Plaintiff has failed to meet the threshold burden of alleging facts plausibly showing that he experienced an atypical and significant hardship implicating a protected liberty interest.  See Giano, 238 F.3d at 225.  He was given thirty days in keeplock when found guilty at the disciplinary hearing, and, as previously noted, courts in this District have consistently held that keeplock of approximately thirty days or less does not implicate a liberty interest even in the absence of detailed factual development of the conditions of confinement.  See Brown, 2010 WL 6428251, at *9. Although there are no allegations in the Amended Complaint suggesting that the thirty-day keeplock punishment should be aggregated with other disciplinary segregation, in light of Plaintiff's pro se status, the Court grants him leave to amend his claims against Defendants Lewis and McDermott in the event he is able to plead facts supporting aggregation.

### K. Envelope Incident[47]

Plaintiff went to an Inmate Grievance Resolution Committee ("IGRC") meeting concerning changes in the law library special access pass at Coxsackie.  Id. at 31.  Unidentified "redneck" corrections officers told Defendant Muschett not to let Plaintiff into the School Program Entry Post. Id.  Plaintiff filed a grievance concerning the new law library pass.  Id.  Plaintiff was called to the IGRC but not told ahead of time that it was in relation to his law library grievance.  Id. at 32. Plaintiff told the IGRC about the law library special pass issue and asked to appeal from the

---

[46] The Court, however, expresses no opinion as to whether Plaintiff's claim against Defendant Schurrs could survive a properly brought motion to dismiss or for summary judgment,

[47] Defendants have identified the envelope incident as "Incident 9."  Defs.' Mem. at 6-7.

48

hearing, indicating that he would by the IGRC the document. Id.

Plaintiff asked an unidentified "rookie" corrections officer on D3 gallery for permission to give the special pass to the IGRC by slipping it under the door. Id. However, the minute he slipped it under the door, "redneck" corrections officers came running from fifty feet away to grab the envelope. Id. The officers falsely wrote in a misbehavior report later filed against Plaintiff that the envelope was not addressed to Defendant Killiar. Id. They also wrote that Plaintiff did not have permission to slide the envelope under the door and had disobeyed correspondence rules, which, according to Plaintiff, was a lie since he had obtained permission from the officer on film. Id.

Plaintiff was denied access to the videotape he believed would show permission being given. Id. at 33. At the hearing, Plaintiff produced a witness who testified that Plaintiff had permission. Id. at 32. The witness was badly treated for testifying on Plaintiff's behalf. Id. Plaintiff brought in another witness who Plaintiff has alleged was induced to lie and say Plaintiff did not have permission. Id. at 33. The D3 officer who had given Plaintiff permission did not write the disciplinary ticket and did not put Plaintiff in keeplock. Id. However, after being hugged by Defendant McDermott at Plaintiff's disciplinary hearing, the officer said that he had told Plaintiff to put the envelope in the mailbox. Id.

Plaintiff again complained that the misbehavior report had no penalty of perjury notice on it and witnesses were not placed under oath. Id. at 34. He also complained that he always had the same hearing officer—McDermott—who is biased, racist, gives greater weight to the testimony of corrections officers, does not address whether complaints are fabrications, and hugged and kissed the D3 officer before he testified. Id. Plaintiff was given thirty day's keeplock. Id.

The Court construes Plaintiff's claim as one against unidentified Defendants for the filing of

a false misbehavior report and against Defendant McDermott for denial of due process in the disciplinary hearing. Plaintiff's failure to identify any Defendants alleged to have filed the false misbehavior report is fatal to his claim. See Alfaro, 814 F.2d at 886. Furthermore, Plaintiff has no *per se* constitutional right to be free from being falsely accused in a misbehavior report, see Boddie, 105 F.3d at 862, and has not alleged facts supporting a retaliation claim. See Freeman, 808 F.2d at 951.

Nor has Plaintiff stated a denial-of-due-process claim in connection with the disciplinary hearing. Plaintiff was given thirty day in keeplock as a result of the disciplinary hearing, which does not implicate a protected liberty interest under Sandin. See Brown, 2010 WL 6428251, at *9. In light of the foregoing deficiencies, Plaintiff's claims arising out of the envelope incident are dismissed. Although there are no allegations in the Amended Complaint suggesting that the thirty-day keeplock punishment should be aggregated with other disciplinary segregation, in light of Plaintiff's *pro se* status, the Court grants him leave to amend his claims in the event he is able to plead facts supporting aggregation.

**L.  Tai Chi Incident**[48]

In June 2011, Defendant Muschett gave Plaintiff a Tier III disciplinary ticket for doing Tai Chi. Am. Compl. at 35. Plaintiff claims that he was not doing Tai Chi and was stunned by the accusation. Id. Plaintiff went to the hearing and at least six or seven times asked Defendant McDermott for a copy of the videotape from in front of the recreation area where he was allegedly doing Tai Chi. Id. It was never given to him. Id. Defendant McDermott "gave [Plaintiff] thirty days," presumably in keeplock. Id. at 35.

---

[48] Defendants have identified the Tai Chi incident as "Incident 10." Defs.' Mem. at 7.

50

The Court construes Plaintiff's claim as one against Defendant Muschett for the filing of a false misbehavior report and against Defendant McDermott for the denial of due process in the disciplinary hearing.  Because prisoners have no *per se* constitutional right to be free from being falsely accused, see Boddie, 105 F.3d at 862, and Plaintiff's thirty-day keeplock punishment has been found not to implicate a protected liberty interest under Sandin, his claims against Defendants Muschett and McDermott are dismissed, with leave to amend granted in the event Plaintiff is able to plead facts showing that the thirty-day sentence should be aggregated with other disciplinary segregation.

### M. Plaintiff's Alleged Refusal to Go Into His Cell[49]

In July 2011, Plaintiff was transferred to C3.  Am. Compl. at 36.  As he was pushing the cart with his belongings in hallway C1, Defendant McIntyre told Plaintiff to tuck in his shirt.  Id. Plaintiff did as instructed and went on to C3 and to his cell.  Id.  Forty-five minutes or an hour later, Plaintiff was told he was keeplocked.  Id.  He was told that he had words with a corrections officer who Plaintiff presumed to be Defendant McIntyre, who cosigned a misbehavior report.  Id.  36-37. Plaintiff later learned it was Defendant Harris, whom Plaintiff claims never to have seen.  Id. at 37. The misbehavior report stated that Plaintiff had refused to go into his cell and had told a corrections officer, possibly Defendant McIntyre or Defendant Harris, not to touch his stuff.  Id.

Plaintiff asked for a videotape showing him going to C1 to establish a time difference and for log books, which Plaintiff claims had been altered.  Id.  Plaintiff was given a videotape that does not show what he wanted.  Id.  Plaintiff was not allowed to present as a witness at his disciplinary

---

[49] Defendants have identified the refusal-to-go-to-his-cell incident as "Incident 11."  Defs.' Mem. at 7.

hearing Corrections Sergeant Balaskee, who had interviewed him on retaliatory tickets.[50]  Id.
Plaintiff called a witness at his disciplinary hearing who said Plaintiff never saw Defendant Harris
and did not know who he was.  Id. at 38.  No proof was presented that Defendant Harris was even
working on the day in issue.  Id.  According to Plaintiff, Defendant McDermott, the hearing officer,
kept leading and confusing witnesses.  Id.  Plaintiff challenged the hearing on denial of videotape,
lack of requirement that disciplinary tickets be signed under penalty of perjury, and denial of
testimony on retaliatory false tickets.  Id.  Plaintiff was given no packages for thirty days.  Id.  Based
upon the allegation in his Amended Complaint that he was in keeplock until August 5, 2011, it
appears that he may also have been placed in keeplock for no more than thirty days.  Id. at 39.

 The Court construes Plaintiff's claim against Defendants McIntyre, Harris, and McDermott
as one for the filing of a false misbehavior report and denial of due process in the disciplinary
hearing.  The Court finds that those Defendants are entitled to dismissal of the claim because
Plaintiff's thirty-day keeplock punishment did not implicate a protected liberty interest under
Sandin.  Brown, 2010 WL 6428251, at *9.  Plaintiff is granted leave to amend in the event he is
able to plead facts showing that the keeplock punishment should be aggregated with other
disciplinary segregation.

### N.  Law Library Access Claim[51]

 In the latter part of July 2011, two weeks before he was scheduled to be released from
keeplock at Coxsackie, Plaintiff began writing to the law library to schedule time for after he was

---

[50] Plaintiff has alleged no facts supporting a retaliation claim in connection with the issuance
of the misbehavior report.

[51] Defendants have not directly addressed this claim in their Motion to dismiss.  It is
therefore being addressed by the Court under 28 U.S.C. § 1915A.

released.  Am. Compl. at 39.  On August 11, 2011, Plaintiff was able to go to the law library to

request a special access pass to type or re-type research under 42 U.S.C. §§ 1983, 1985, and 1986.

Id.  Plaintiff showed Defendant Muschett and the "Bloods, Muslims, snitches, [and] Kings" an

order to show cause that had to be answered.  Id.  Defendant Muschett and the gang workers told

Plaintiff he needed a letter from a judge even though Directive 4483 required only a showing of

ongoing active legal work.  Id.

When Plaintiff filed a grievance concerning the law library at Coxsackie, he was told he had

to talk to the law library supervisor and legal coordinator even though there was no law library

supervisor or legal coordinator.  Id. at 40.  IGRC then told him that he had to write to the

Superintendent first, even though according to Plaintiff, inmates do not write to the Superintendent

first; inmates file a grievance and appeal to the Superintendent.  Id.

IGRC allowed corrections officers to walk in while Plaintiff was talking, which resulted in

Plaintiff losing his recreation.  Id.  Plaintiff felt that Defendants Killiars and Muschett were

covering for two nonexistent workers at Coxsackie—the law library supervisor and legal

coordinator.  Id.  Plaintiff then wrote to the Chief Law Librarian in Albany, but the letter was sent to

Defendant Muschett.  Id.  Plaintiff appealed the IGRC decision on his grievance to the

Superintendent at Coxsackie, but IGRC told him he could not appeal to the Superintendent and to

talk to Defendant Killiar, the supervisor at IGRC.  Id.

The Court construes Plaintiff's allegations as a claim for failure to follow state grievance

procedures against Defendants Killiar and Muschett.[52]  A prisoner has no constitutional right to a

_____

[52] Although Plaintiff's grievance related to use of the law library, Plaintiff has not included
allegations supporting a claim for denial of the right of access to courts due to inadequate access to
law library facilities.  See Bounds v. Smith, 430 U.S. 817, 821 (1977) (holding that the
constitutional right of access to courts includes providing prisoners with reasonable access to

prison grievance procedure or to have grievances investigated, and the failure to follow state grievance procedures does not give rise to a § 1983 claim.  See Tafari v. McCarthy, 714 F. Supp.2d 317, 349 (N.D.N.Y. 2010) ("[State grievance programs] are not considered constitutional rights . . . .  Thus, courts have consistently held that violations of those procedures or the state's failure to enforce them, does not give rise to a claim under § 1983.").  Plaintiff's claim is therefore dismissed without leave to amend.

### O.  Excessive-Force and Denial-of-Due-Process Claims Involving Defendant Young[53]

Plaintiff wrote letters to Magistrate Judge Lowe, the Court, the New York State Attorney General's Office, the IGRC, the Office of Compliance, and the Commissioner of Correction concerning the law library and IGRC complicity.  Am. Compl. at 40-41.  While Plaintiff was in line for breakfast he saw Defendant Young, a Corrections Sergeant, "eyeballing" the letters.  Id. at 41. Plaintiff told Defendant Young that the letters were going to federal court, and Defendant Young screamed that Plaintiff was threatening him with a lawsuit even though the letters were not about him.  Id.  Plaintiff was ordered into C gallery where his legs were pulled out from under him, he was handcuffed, lifted in the air and thrown down on his stomach, and punched in the head, shoulder, and back.  Id.  Plaintiff suffered back pain.  Id.  In his Response, Plaintiff has disclosed that it was not Defendant Young who assaulted and hogtied him, but that Defendant Young was standing about six feet away when it happened.  Resp. at 22.

---

adequate prison law libraries).  A plaintiff is required to demonstrate actual injury—"that the alleged shortcomings in the library . . . hindered his efforts to pursue a legal claim."  Lewis v. Casey, 518 U.S. 343, 349 (1996).  Plaintiff's Amended Complaint contains no allegations suggesting that he sustained an actual injury as a result of the perceived inadequacies or lack of reasonable availability of the Coxsackie law library.

[53] Defendants have identified the Young incident as "Incident 12."  Defs.' Mem. at  7.

54

Gibson was charged with attempted assault in an unsworn misbehavior report.  Am. Compl. at 41.  At the disciplinary hearing,[54] Plaintiff was denied three inmate witnesses, denied the right to question Defendant Young on why he had ordered Plaintiff into C gallery, denied a videotape of the hallway incident, and found guilty of assault even though no one claimed to be hurt.  Id.  Plaintiff was given a punishment of one year but does not indicate where the punishment was to take place. Id. at 41-42.

The Court construes Plaintiff's Amended Complaint as asserting claims for: (1) use of excessive force in violation of the Eighth Amendment against Defendant Young,[55] or, in light of Plaintiff's Response, possibly an Eighth Amendment failure-to-intervene claim; and (2) denial of due process in the disciplinary hearing held on the attempted assault.  Plaintiff may also have intended to assert a claim against Defendant Ingraham, although the only allegation in the Amended Complaint concerning him is, "Also CO Ingraham does not look like the guy who assaulted me I thought the officer who escorted me to clinic assaulted me but they denied this.  Maybe both did." Id. at 42.

Defendants have not moved to dismiss the claims except as to Defendant Ingraham. Contrary to Defendant's contentions, the Court finds that Plaintiff has pleaded sufficient facts with regard to Defendant Ingraham.  While Plaintiff acknowledges not being certain that Defendant Ingraham was one of the corrections officers who used force, he has alleged that he might be, thus making dismissal at this point premature.  While expressing no opinion as to whether Plaintiff's

---

[54] Plaintiff has not identified the hearing officer in the disciplinary proceeding in his Amended Complaint.

[55] According to the docket, Defendant Young has not yet been served, and he is not a party to Defendants' Motion to dismiss.  Therefore, the Court's assessment of Plaintiff's claim against him is made under § 1915A.

claim involving Defendants Young and Ingraham, whether for excessive force or failure to intervene, can survive a properly made motion to dismiss or for summary judgment, the Court declines to dismiss the Amended Complaint as against those Defendants.

### P. Dismissal as Against Supervisory Defendants

Plaintiff has sued DOCCS Commissioner Fischer, Downstate Superintendent Perez, Adirondack Superintendent Bisceglia, IGRC Supervisor Killiar, and an as-yet unidentified DOCCS Deputy Commissioner. Am. Compl. at 1-2, 4. Defendants seek dismissal as against all five, including Defendants Bisceglia and Killiar, who have yet to be served and are not parties to Defendants' Motion to dismiss,[56] on the grounds that Plaintiff has failed to allege their personal involvement in the claims asserted by Plaintiff. Defs.' Mem. at 9-11.

Since governmental officials may not be held liable for the unconstitutional actions of their subordinates under § 1983, it was incumbent upon Plaintiff to set forth facts making a plausible showing of each supervisory Defendant's personal involvement in the violation of his constitutional rights. See Iqbal, 556 U.S. at 676. Plaintiff has failed to do so with respect to each of those supervisory Defendants. Those Defendants are therefore entitled to dismissal of Plaintiff's Amended Complaint as against them.

In his Response, Plaintiff claims that he has copies of direct communications with some or all of those Defendants concerning the claims alleged in the Amended Complaint. Resp. at 4-5, 25-26. Although communications from Plaintiff to those Defendants are alone insufficient to state a claim, given Plaintiff's *pro se* status, the Court finds that the information provided by Plaintiff in his Response warrants granting him leave to amend with regard to Defendants Fischer, Perez,

---

[56] The Court can consider and, if warranted, dismiss *sua sponte* claims against Bisceglia and Killiar under § 1915A.

Bisceglia, Killiar, and the unidentified Deputy Commissioner.

### Q. Defendants Blair and Pasqualli

Defendants Blair and Pasqualli, both of whom have been served, seek dismissal of Plaintiff's Amended Complaint on the grounds that there are no allegations in the Amended Complaint showing that they were personally involved in any of the alleged violations of Plaintiff's constitutional rights. Defs.' Mem. at 25-26. There appear to be no factual allegations concerning Defendant Blair in the Amended Complaint. The sole mention of Defendant Blair is his name written at the top of the allegations dealing with the Downstate incident. Am. Compl. at 5. The only mention of Defendant Pasquelli is his name written at the top of the envelope incident. Id. at 31. A complaint that fails to allege facts showing personal involvement by a defendant is "fatally defective" on its face. See Alfaro, 814 F.2d at 886. Therefore, Plaintiff's Amended Complaint is dismissed as against Defendants Blair and Pasquelli, although in light of Plaintiff's *pro se* status, leave to amend is granted.

### R. Defendants' Request for a More Definite Statement

Defendants have moved for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) in the event the Court does not grant their Motion to dismiss. Rule 12(e) permits the filing of a motion for a more definite statement "[i]f a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." Requests for a more definite statement are generally disfavored and should not be granted unless "the complaint is so excessively vague and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to answer it." Holmes v. Fischer, 764 F. Supp. 2d 523, 531 (W.D.N.Y. 2011) (citation and internal quotations omitted). Plaintiff's Amended

Complaint is neither so vague nor so ambiguous as to be unintelligible, and Defendants will not be prejudiced by having to answer whatever allegations remain after determination of their Motion to dismiss.  Therefore, Defendants' request is denied.

### S.  Defendants' Request for a Stay of Discovery

Defendants' request for a stay of discovery pending the determination of their Motion to dismiss is denied as moot.

## IV.    CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion (Dkt. No. 121) for partial dismissal of Plaintiff's Amended Complaint (Dkt. No. 50) is **GRANTED in part** and **DENIED in part**, and that Plaintiff's Amended Complaint (Dkt. No. 50) is **DISMISSED in part** under 28 U.S.C. § 1915A, consistent with this Memorandum-Decision and Order; and it is further

**ORDERED**, that the following claims in Plaintiff's Amended Complaint (Dkt. No. 50) are **DISMISSED without leave to amend**: (1) claim for money damages asserted against all Defendants in their official capacity on Eleventh Amendment grounds;[57] (2) claims for injunctive and declaratory relief; (3) Downstate claim for failure to train corrections officials on the use of force, failure to require officers to attend stress management classes, and creating a policy of willful blindness to attacks on prisoners against Defendants Fischer, Perez, Bisceglia, Killiar,[58] and the unnamed Deputy Commissioner; (4) Fourteenth Amendment claim for denial of due process at

---

[57] Dismissals against nonmoving parties are *sua sponte* by the Court under 28 U.S.C. § 1915A.

[58] Dismissal as against Defendants Bisceglia, Killiar, and the unidentified Deputy Commissioner, who have not been served and are not parties to the motion, is *sua sponte* under 28 U.S.C. § 1915A.

Downstate against the Jane Doe hearing officer; (5) Downstate conspiracy claim against unidentified corrections officers to present false testimony; (6) Downstate state-law claims for assault and battery and intentional infliction of emotional distress against Defendants Martel and Swanhart; (7) illegal search and seizure and retaliation claims against unidentified corrections officers at Adirondack, **except** for Plaintiff's claim regarding corrections officers reading his legal documents during the search, with respect to which Plaintiff is **granted leave to amend**; (8) conspiracy claim against unidentified Defendants involving inmate Aubrey at Adirondack; (9) claim for harassment and destruction of personal property by unidentified Defendants at Adirondack; (10) claim of verbal harassment and spreading rumors about Plaintiff by Defendant Maher and unidentified corrections officers in retaliation for filing grievances about the Adirondack law library; (11) Adirondack state-law claims for fraud and intentional infliction of emotional distress against unidentified Defendants; (12) state-law claims for assault and battery, intentional infliction of emotional distress, and abuse of process against Defendants Maher and Allen in connection with the alleged use of excessive force at Adirondack; (13) claim for conspiracy in connection with denial-of-due-process claim on alleged refusal of a pat frisk against Defendants Maher, Allen, and John Doe # 7; and (14) claim for failure to follow state grievance procedures against Defendants Killiar and Muschett; and it is further

**ORDERED**, that the following claims in Plaintiff's Amended Complaint (Dkt. No. 50) are **DISMISSED with leave to amend**: (1) Downstate Eighth Amendment excessive-force claim against Defendants Martel and Swanhart; (2) Downstate Eighth Amendment failure-to-intervene claim against Defendants Martel and Swanhart and John Does #1, #2, and #4, and Jane Doe #3; (3) Downstate equal-protection claim against Defendants Martel and Swanhart; (4) Downstate claim for

retaliatory filing of a misbehavior report against Defendants Martel and Swanhart; (5) Eighth

Amendment dental-care claim at Adirondack against unidentified Defendants; (6) selective-

enforcement equal-protection claim against unidentified Defendants at Adirondack; (7) claim for

filing of a false misbehavior report in retaliation for library grievances concerning the Adirondack

law library against unidentified Defendants; (8) claim for filing of a false misbehavior report

charging Plaintiff with refusing a pat frisk at Adirondack and denial of due process in the

disciplinary hearing at Upstate against Defendants Maher, Allen, and John Doe #7; (9) Eighth

Amendment failure to protect regarding Plaintiff's cell mate at Upstate; and (10) failure-to-train,

etc., claims against Defendants Fischer, Perez, Bisceglia, Killiar, and the unnamed Deputy

Commissioner in connection with the alleged use of excessive force at Adirondack; and it is further

**ORDERED**, that the following claims in Plaintiff's Amended Complaint (Dkt. No. 50) are

**DISMISSED with leave to amend only to plead facts**, if such facts exist, supporting aggregation

of disciplinary segregation: (1) claim for denial of due process in a disciplinary hearing at

Coxsackie on the misbehavior report regarding the mess hall line against Defendant McDermott; (2)

claim for the filing of a false misbehavior report concerning a clogged toilet at Coxsackie and denial

of due process at the disciplinary hearing against Defendants Lewis[59] and McDermott; (3) claim for

denial of due process in the disciplinary hearing on the misbehavior report regarding the count at

Coxsackie against Defendant McDermott; (4) claim for retaliatory filing of a misbehavior report by

unidentified corrections officers with regard to the envelope incident at Coxsackie and denial of due

process against Defendant McDermott in the disciplinary hearing; (5) claim for retaliatory filing of a

misbehavior report by Defendant Muschett with regard to the Tai Chi incident at Coxsackie and

---

[59] Dismissal as against Defendant Lewis, an unserved Defendant, is *sua sponte* under § 1915A.

denial of due process against Defendant McDermott in the disciplinary hearing; (6) claim for

retaliatory filing of a misbehavior report  by Defendants McIntyre and Harris with regard to the

incident at Coxsackie where Plaintiff allegedly would not go into his cell and denial of due process

against McDermott in the disciplinary hearing; and it is further

> ORDERED, that all claims against the following Defendants in Plaintiff's Amended

Complaint (Dkt. No. 50) are **DISMISSED in their entirety with leave to amend**: supervisory

Defendants Brian Fischer, Ada Perez, Leo Bisceglia, and Killiar,[60] and the unidentified Deputy

Commissioner; Defendant corrections officers Sean Blair and Elefterios; and it is further

> ORDERED, that Defendants' Motion (Dkt. No. 121) to dismiss is **DENIED** as to the

following claims: (1) retaliatory filing of a misbehavior report at Coxsackie against Defendant

Bushane;[61] (2) retaliatory filing of a misbehavior report at Coxsackie by Defendant Schurrs;[62] and

(3) excessive-force claim against Defendant Ingraham at Coxsackie; and it is further

> ORDERED, that Plaintiff's Eighth Amendment claims for excessive force against

Defendants Maher and Allen at Adirondack and Young and Ingraham at Coxsackie **SURVIVE** *sua*

*sponte* review under § 1915A; and it is further

> ORDERED, that in the event Plaintiff elects to file a Second Amended Complaint in

---

[60] Dismissal as against Defendants Bisceglia, Killiar, and the unidentified Deputy Commissioner, who have not been served and are not parties to the Motion, is *sua sponte* under 28 U.S.C. § 1915A.

[61] Although Defendants have moved for dismissal on behalf of Defendant Bushane, he has not been served and is not a party to the Motion to dismiss.  The Court has reviewed and sustained Plaintiff's retaliation claim against Defendant Bushane under § 1915A.

[62] Defendant Schurrs has not been served and is not a party to the Motion to dismiss. However, the Court has reviewed and sustained Plaintiff's retaliation claim against Defendant Schurrs under § 1915A.

accordance with the leave granted in this Memorandum-Decision and Order, the Second Amended Complaint must be filed in the Clerk's Office **within sixty (60) days** of the date of this Memorandum-Decision and Order, and Defendants who have been served in the action must file and serve their Answer or move with regard to the Second Amended Complaint within **thirty (30) days** thereafter; and it is further

    **ORDERED**, that any further amended complaint filed as a result of this Memorandum-Decision and Order must include factual allegations describing the role of each named Defendant sufficiently to allow the Court to assess whether a plausible claim has been stated against them; and that it be a wholly integrated and complete pleading, with separately numbered allegations, that does not rely upon or incorporate by reference pleadings previously filed in the action; and it is further

    **ORDERED**, that in the event Plaintiff does not file a Second Amended Complaint within **sixty (60) days** of the date of this Memorandum-Decision and Order, remaining Defendants Maher, Allen, and Ingraham, and Defendants Bushane, Schurrs, and Young, if they have been served in the action, must serve and file their Answer to the allegations in Plaintiff's Amended Complaint responding to the following claims: (1) excessive-force claim against Defendants Maher and Allen at Adirondack; (2) retaliatory filing of a misbehavior report by Defendant Bushane at Coxsackie; (3) retaliatory filing of a misbehavior report by Defendant Schurrs at Coxsackie; and (4) excessive-force claim against Defendants Young and Ingraham at Coxsackie; and it is further

    **ORDERED**, that all pleadings, motions, and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  **Any paper sent by a party**

**to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket.**  Plaintiffs must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 121-1) for a more definite statement is **DENIED**; and it is further

**ORDERED**, that Defendants' Motion (Dkt. No. 121-1) to stay discovery while their Motion (Dkt. No. 121) to dismiss is pending is **DENIED as moot**; and it is further

**ORDERED**, that Plaintiff's Letter Motion (Dkt. No. 160) to amended his Amended Complaint (Dkt. No. 50) is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court provide copies of the unpublished decisions cited in this Memorandum-Decision and Order to Plaintiff; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all the parties.

**IT IS SO ORDERED.**

DATED:        March 29, 2013
              Albany, New York

Lawrence E. Kahn
U.S. District Judge

63